### SIGOURNEY *against* MUNN and another.

Real estate, acquired with partnership funds, for partnership purposes, will be regarded in equity as partnership stock, and liable to all the incidents attending that description of property.

So, real estate, originally put in as partnership stock, or subsequently acquired with partnership funds, may, by agreement of the partners, in their articles, or at the time of the purchase, become partnership stock.

In winding up the concerns of a partnership, after a dissolution, one partner cannot take the partnership stock at a valuation; but its value must be ascertained, by a conversion of it into money.

THIS was a bill in chancery, praying for an account, for a division of partnership effects and for a conveyance of title to certain real estate.

The facts stated in the bill and found by a committee, presented the following case.    On the 21st of *July,* 1819, *Charles Sigourney,* the plaintiff, entered into partnership in mercantile business with *Charles Munn,* one of the defendants, to be terminated, at the desire of either party, on the 1st day of *April,* in any year.    By the articles of partnership, the plaintiff was to furnish the capital of the company, to consist of all his stock of hardware and other goods then on hand ; fifty shares of the stock of the *Phœnix Bank ;* fifty-four shares of stock in the *Hartford Manufacturing Company ;* and the one half of a lot of land, bought by the plaintiff, in conjunction with *Thomas Lloyd,* for the purpose of building a store thereon.    This property the plaintiff accordingly delivered and transferred to the company.    By a release deed, dated the 5th of *February,* 1825, the plaintiff conveyed to *Munn,* for the consideration of one dollar received of *Charles Sigourney* and *Charles Munn,* merchants in trade under the firm of *Charles Sigourney & Co.,* all such right and title as the plaintiff had to the lot of land above-mentioned ; meaning, by such deed, to release to said *Sigourney* and *Munn,* to be held by them in such proportion as is agreed on between them, 1st, all right and title, which the plaintiff had to the land, by a deed of quit-claim of one equal undivided half thereof, made to him, by *Thomas Lloyd,* and bearing date the 15th day of *August,* 1817 ; 2ndly, all the right and title, which the plaintiff had thereto, by virtue of a deed of mortgage of the other equal undivided half thereof, made to him by *Thomas Lloyd,* bearing date the 27th of *February,* 1819.    The partners, finding the lot to be inconvenient to be built upon, mutually agreed to purchase the other half thereof; and in order the better to accommodate their business, they did, on the 5th day of *February,* 1825, purchase of *Lloyd,* the residue of the lot, and pay for the same out of the company property.    The deed from *Lloyd* was a deed of release, in the usual form, for " the consideration of 5942 dollars, 3 cents, received of *Charles Sigourney* and *Charles Munn,* merchants in company, under the firm of *Charles Sigourney & Co.,*" to them and their heirs.    The property so purchased was agreed by the partners, and intended by them, to be annexed to the land mentioned in the articles of partnership, and to be held and used for the same purposes, and in the same proportion and manner.    The partners still finding the form of the land irregular, and inconvenient to be built

upon, to the best advantage, with a view to straighten the lines and square the corners, effected an exchange with *Joseph Pratt*, by deeds dated the 6th of *December*, 1825, and with *Burrage B. Dimock*, by deeds dated the 18th of *March*, 1826, of small parcels of their building lot, for quantities of equal value adjoining. These exchanges were made in order to carry into effect the original design of building, and were mutually advantageous to the parties. And it was intended by the plaintiff and *Munn*, that the whole of this real estate, as it was after the exchanges were made, should be held and used in the same proportion and manner, as the lot first acquired by the partners. All the deeds, by which these conveyances were made, were recorded in the records of the town of *Hartford*, within a reasonable time after the dates of the deeds respectively. In the month of *October*, 1825, the partners made preparations to carry into effect their plan of building; and actually took down the old buildings standing on the land, and contracted for laying the foundations of a block of new buildings. On the 19th of *November*, 1825, while this work was progressing, *Munn* gave notice to the plaintiff, that he would proceed no further in erecting the buildings; and that he proposed to dissolve the partnership. This notice surprised the plaintiff; but he was compelled, by the exigencies of the case, to proceed in the execution of the plan. After the plaintiff had expended considerable sums of money from his individual funds, for this purpose, *Munn*, on the 24th of *March*, 1826, without the consent or knowledge of the plaintiff, mortgaged all his interest in said real estate to *John Holbrook*, one of the defendants, to secure the individual debt of *Munn* to *Holbrook* for 2983 dollars, 87 cents. This mortgage deed was recorded on the records of the town of *Hartford*, on the day of its date. *Holbrook*, at the time he took it, had no other knowledge that the estate mortgaged was company property than what may have been derived from the records of the former deeds. In pursuance of the notice given by *Munn*, the partnership became dissolved, and terminated, on the 1st of *April*, 1826. *Munn* left the business, without bringing the affairs of the concern to a close, and without dividing the property, and soon afterwards left the state.

The committee reported, that they had taken an account of the partnership stock and effects, and of the profit and loss, and had also adjusted the company accounts between,

*Hartford,*
June, 1828,

Sigourney
*v.*
Munn,

the late partners, and found that there was due to *Sigourney* from *Munn,* on a settlement of all the company concerns, the sum of 878 dollars, 9 cents. In coming to this result, they included in the account the several articles of property, personal and real, on hand at the time of the dissolution, amounting, by appraisal, to the sum of 39,759 dollars, 21 cents.

The superior court reserved the case for the advice of this Court as to what decree should be passed.

*Sherman* and *T. S. Williams,* for the plaintiff, contended, 1. That as between the plaintiff and *Munn,* the land in question will be regarded, in equity, as a part of the partnership fund. This estate either constituted a part of the original capital stock of the partnership, or was purchased by the partnership, for the use of the partnership, and was paid for out of the partnership funds. The deed of the 5th of *February,* 1825, from the plaintiff to *Munn,* was executed for the purpose of making him a trustee of the property for the partnership ; and this appears upon the face of the deed. That as between the partners themselves, during their lives, real estate, thus situated, should be considered as belonging to the partnership fund, has never been doubted. It was formerly held, that it was, *in all respects,* a portion of the partnership fund, and was therefore distributable as personal property. *Jefferyes* v. *Small,* 1 *Vern.* 217   *Lake* v. *Craddock* & al. 3 *P. Wms.* 158. *Gow on Part.* 50. The only departure from this principle has been in relation to the rights of the *widow* and the *heir ;* as in *Thornton* v. *Dixon,* 3 *Bro. Ch. Ca.* 199. And even in this case, Lord *Thurlow* distinctly recognized the general principle ; as he did afterwards, in *Lyster* v. *Dolland,* 1 *Ves.* jun. 434, 5. And notwithstanding one or two decisions of Sir *William Grant,* as master of the rolls, *Bell* v. *Phyn,* 7 *Ves.* 453. *Balmain* v. *Shore,* 9 *Ves.* 500.) founded on the particular point determined in *Thornton* v. *Dixon,* it is now settled, that real estate purchased with partnership property, for the use of the partnership, is to be treated as personal property, not only as between the partners themselves, and as between the partnership and creditors, but also as between the representatives of a deceased partner. *Selkrig* v. *Davies,* 2 *Dow's Parl. Ca.* 242   *Crawshay* v. *Maule,* 1 *Swans.* 508. 521. *Gow on Part.* 52. *Richardson's* exrs. v. *Wyatt,* 2 *Desau.* 471. 482.

2. That in closing the concerns of a partnership, it is not in

the power of one partner to require a *sale* of the partnership effects as a criterion of value. In *England*, the rule is, that if specific articles are urged on one of the partners, he may object to receive them at a valuation, and may require a sale. *Mont. on Part.* 124. In the state of *New-York*, where there had been a dissolution of the partnership, in consequence of an assignment by one of the partners, of all his interest in the partnership stock, the true value, or the value in the ordinary course of business, was considered as the proper criterion, and an *inventory* subsequently taken by the other partners, was received as evidence of such value. *Marquand* & al. v. *The New-York Manufacturing Company*, 17 *Johns. Rep.* 525. 537. In *Connecticut*, a court of chancery has never ordered a sale of partnership effects, in a case between the partners, for the mere purpose of ascertaining their value. Much less has it become an unbending rule, that in every case, and under all circumstances, there must be a sale, before the value can be known. Such a rule, in this state, would produce great injustice. Our population is so scattered, and our markets are so limited, that a forced sale furnishes a very uncertain criterion of the true value. If there is *any* case, in which a sale may be dispensed with, there can be no objection to the course pursued in this case.

3. That *Holbrook*, when he took the mortgage deed from *Munn*, had notice from the town records, that the premises were partnership property. Now, it will not be controverted, that *Holbrook* will be deemed to have had all the notice, which could be derived from an actual inspection of the records. There is on the face of the deed from rhe plaintiff to *Munn* a *trust* apparent. The consideration was merely nominal, and that " received of *Charles Sigourney* and *Charles Munn*, merchants in trade ;" and the estate was " to be held by said *Sigourney* and *Munn* in such proportion as was agreed on between them." The deed from *Lloyd* was to *Charles Sigourney* and *Charles Munn*, for a consideration received of them as " merchants in company under the firm of *Charles Sigourney & Co.*" Now, supposing enough to convey actual notice was required, *what facts* must be notified ? Only that the land was bought with partnership funds, for the use of the partnership. *Gow on Part.* 50. 51. Does not this appear from the deeds referred to ? The deeds from *Pratt* and *Dimock*, being on the face of them deeds of exchange, were apparent-

*Hartford,*
June, 1828.

Sigourney
*v.*
Munn.

ly and necessarily for the same use, and therefore conveyed the same notice.    But it is not necessary that the deeds should express enough to give the notice in question.    It is sufficient that the party was informed by them, that they were held subject to an agreement which affected the title.    It then became his duty to make enquiry; and he will be deemed to have had all the notice, which would result from that enquiry. *Peters* v. *Goodrich*, 3 *Conn. Rep.* 146.

4. That *Munn* could, in equity, convey to a person affected with notice, nothing but his share of the partnership property; and nothing is to be considered as his share, but his proportion of the surplus on a settlement of the partnership account. *West* v. *Skip*, 1 *Ves.* 239. 242.    This, by the finding of the committee, was a negative quantity.

*N. Smith* and *W. W. Ellsworth*, contra, contended, 1. That real estate is not ordinarily partnership property; and where it is conveyed to two or more persons, whether they are partners in trade or not, they hold it subject to the rules of the common law regarding real estate, unless there is an explicit agreement to make it partnership property.    In the absence of such agreement, its having been paid for out of partnership funds, is not sufficient to convert it into partnership property. *Thornton* v. *Dixon*, 3 *Bro. Ch. Rep.* 199.    *Bell* v. *Phyn*, 7 *Ves.* 453.    *Balmain* v. *Shore*, 9 *Ves.* 500.    *Goodwin* v. *Richardson*, 11 *Mass. Rep.* 469.    *Coles* v. *Coles*, 15 *Johns. Rep.* 159.

2. That if the real estate in question is to be regarded as partnership property, still there is no foundation for a decree against *Munn,* as it does appear that there is a balance due from him to the plaintiff on an adjustment of the partnership concerns.    A court of equity cannot see, that the plaintiff has any occasion to call for the land, in order to satisfy his claim: The goods may be more than sufficient to pay him.    The *appraisal* procured by the plaintiff, is of no avail.    This did not vest the property in him exclusively; nor is it any criterion of value, which a court of equity will regard.    Either party may insist on *a sale* of the stock; and this is the way in which its value can be best ascertained.    One partner can never bind the other by a valuation. *Gow on Part.* 291–2.    *Featherstonhaugh* v. *Fenwick*, 17 *Ves.* 309.

3. That *Holbrook,* when he took his security, had no notice

of any trust, or of any equitable claim of the plaintiff, which can defeat his title.    That he had any actual knowledge, is not pretended.    Had he constructive notice from the deeds? There is nothing on the face of the deeds inconsistent with the fact, that *Sigourney* and *Munn* held this property as tenants in common.    In two of the deeds, they are described as " merchants in trade under the firm of *C. Sigourney & Co.*" This was mere *descriptio personarum*.    It shews neither, that they paid for the land from the partnership funds, nor that they held it as partners.    The deeds from *Pratt* and *Dimock* do not even contain this description of the grantees : they are merely called " *C. Sigourney* and *C. Munn* of the city of *Hartford.*"    But in all of them, the *habendum* is, " to the said *Sigourney* and *Munn,* and to their heirs and assigns, *to the only use and behoof* of the said *Sigourney* and *Munn* and their *heirs* and assigns."    Does this show, that the estate was conveyed *to the only use and behoof of the partnership?*    Is there here any intimation of a *trust?*    As the deeds expressed nothing from which notice could be implied, so they prompted to no enquiry.    They pointed to no *object* of investigation. There was nothing to indicate the *need* of any enquiry.

HOSMER, Ch. J.    1. Whether as between *Sigourney* and *Munn* the land mentioned in the plaintiff's bill is a portion of the partnership fund, is the first question which the case presents.

For the more clear understanding of the questions of law in the case, I will consider the rights of the parties in relation to real estate, by a division of them into three classes.

The first of them exists when partners invest part of their capital in land, without any reference to the accommodation of the partnership business, and without any special agreement concerning the use of the property.

This class of rights is so distinct from the case before us, that to discuss it would be useless ; and my only purpose in noticing it, is to dispose of some of the determinations that have been cited.

The case of *Coles* v. *Coles,* 15 *Johns. Rep.* 159. hardly falls within it, and certainly does not extend beyond it.    The partners, *Stephen* and *Willet Coles,* sold and conveyed two lots of land for 9000 dollars, which sum was paid by the purchaser to the defendant.    To recover this sum, the administrators of

*Hartford, June, 1828,*

Sigourney
*v.*
Munn.

*Stephen* brought an action against *Willet* for money had and received. A partnership had existed between the intestate and the defendant, in relation to the business of a still-house situate on the above lots of land; but it does not appear, that the land or house was bought with partnership property, or that they were any part of the company's fund. A verdict was rendered in favour of the plaintiff, under the judge's direction, for a moiety of the sum received by the defendant, on the ground that the intestate was entitled only to the half of the land, the partners being joint owners or tenants in common of it. Now, on these facts, that they were tenants in common, and not partners, in the land, is too clear to be questioned. The court, it is true, expressed an opinion, that the principles and rules of law, which govern and regulate the disposition of the partnership property, do not apply to real estate, even when held for the purposes of the partnership. This opinion, however, was *obiter;* and the question could not be thoroughly discussed, in a case where it was unimportant and inapplicable; and that this was the fact every one would be convinced, by reading the report of the case. Were it entitled to higher consideration, I would array against it the determination in *Edgar* v. *Donnally* & al. 2 *Munf.* 387. in which it was decided, that where a right of land had been acquired with partnership stock, and a title was taken in the name of one of the partners, a claimant under the other partner in equity was entitled to a moiety of the land, against a purchaser with notice of the partnership right.

The case of *Goodwin* v. *Richardson,* 11 *Mass. Rep.* 469. falls within the class I am considering. Land was mortgaged to two partners, to secure a partnership debt; and an absolute title was afterwards obtained by foreclosure. This was considered by the court as the acquisition of a *new title,* by purchase, out of the partnership fund; and that the partners, in this transaction only, were tenants in common of the estate. The case involves this proposition merely, that where two partners buy land with partnership stock, and there is nothing more in the case, the land is not partnership property.

The cases of *McDermot* v. *Lawrence,* 7 *Serg.* & *Rawle,* 442. and *Forde* v. *Heron,* 4 *Munf.* 316. go beyond the principle of the former case, and decide, that real estate, acquired by partnership funds, and held by partners in common, may be charged by one partner, on his private agreement, to the ex-

tent of his legal title, provided the purchaser or mortgagee dealt *Hartford,*
with him *bona fide*, and without notice of the partnership rights.  June, 1828.

I now come to the consideration of a second class of rights,    Sigourney
—that is, where partners invest part of their capital in real         *v.*
property *for the purpose of accommodating the partnership*      Munn.
*business.*

Courts of law, who look at the legal title only, will consider
persons in the above predicament merely as tenants in com-
mon. But courts of equity, unfettered by technical rules, and
regarding the justice of each particular case, will break
through the exterior form of a transaction, and if real estate is
acquired by partnership funds, for partnership purposes, will
consider it as the stock of the company, and the legal owners
as trustees for those beneficially interested. It is an obvious
truth, that partners are sometimes obliged to vest part of the
company's fund in real estate, the better to carry on their
trade ; and when this is done, common sense and natural jus-
tice demand, that houses and land thus acquired, with joint cap-
ital for joint purposes, should be considered as partnership
property, and be liable to all the incidents attending the com-
pany's stock. Nor am I able to imagine a reasonable objec-
tion to the principle. If there is any, it must arise from its
producing general inconvenie ce ; but for this supposition there
is no foundation. It is entirely obviated, by the refusal of a
court of equity to interfere, where a conveyance is *bona fide*
and for valuable consideration.

To enter on an examination of all the cases decided in
*Westminster-Hall*, in which the subject in question has been
extensively discussed, would be both tedious and unnecessary.
That partnership capital invested in real estate, for the purpose
of accommodating the partnership business, is, in chancery,
deemed personal estate and part of the company's fund, has
been decidedly established. *Thornton* v. *Dixon*, 3 *Bro. Ch.
Ca.* 199. *Smith* v. *Smith*, 5 *Ves.* 189. *Ripley* v. *Water-
worth*, 7 *Ves.* 424. *Featherstonhaugh* v. *Fenwick*, 17 *Ves.*
298. *Townsend* v. *Devaynes*, *Gow on Part.* 52. *Crawshay*
v. *Maule*, 1 *Swans.* 521. *Selkrig* v. *Davies*, 2 *Dow's Parl.
Ca.* 242. Decisions to the contrary have heen made, it is
admitted. *Bell* v. *Phyn*, 7 *Ves.* 453. *Balmain* v. *Shore*, 9
*Ves.* 500. *Gow on Part.* 51, 2, But the number and weight
of determinations are altogether in favour of the preceding
principle. Lord *Eldon*, in the case of *Selkrig* v. *Davies*, 2

*Dow's Parl. Ca.* 242. has gone the length of expressing the opinion, that all property involved in a partnership concern ought to be considered as personal.    See also *Crawshay* v. *Maule*, 1 *Swans.* 508. 521.

There remains a third class of cases, which I will now consider ; and that is, when partners, in their copartnership articles, or at the time of a purchase, agree, that real estate, advanced as stock, or acquired with partnership funds, shall form a part of the company's property.

It was decided by Lord *Thurlow*, in *Thornton* v. *Dixon*, (*supra*) that a copartnership agreement might alter the nature of real property, if it were express, and thereby make it partnership fund ; (11 *Ves.* 665, 6, 7.   7 Ves 425.) and in two cases, which came before the late learned master of the rolls, Sir *William Grant*, he acted upon the above decision, and considered it to conclude the question.    *Bell* v. *Phyn*, 7 *Ves.* 453. *Balmain* v. *Shore*, 9 *Ves.* 500.    In the case cited from the 7th vol. of *Serg.* & *Rawle*, (*p.* 438.)  Ch. J. *Tilghman* observed. that by *positive agreement*, as between the partners and their heirs and personal representatives, the character of real estate may be changed ;—that it may be brought into stock, and considered as personal property.

I think there exists no reasonable doubt, that the land in question, put into the company stock in part, and partly bought for partnership purposes with partnership funds, and the whole being under an express agreement that it should be partnership property, must in equity be considered and treated in this light.

2. The next question occurring in the case, is, whether there is a balance due to the plaintiff, after the application of all the company funds towards his demand.    This he has averred ; and to establish his allegation, he has adduced the report of the committee appointed to enquire into the truth of the facts set forth in his bill.    That the fact alleged is supported, admits of no doubt, if the committee have duly ascertained the value of the partnership property.    A large amount of personal estate was on hand, at the dissolution of the partnership ; and in arriving at their result, the committee have taken a valuation by estimate, both of the real and personal estate.    This proceeding is inadmissible.    At present, I shall say nothing concerning the real estate ; but as to the personal property, it may not in this manner be estimated.    A partner cannot compel his

copartner to accept what, according to valuation, his interest *Hartford,* may be worth *Featherstonhaugh* v. *Fenwick,* 17 *Ves.* 309. *June, 1828.*

In every case in which a court of equity interferes, to wind up the concerns of a partnership, it directs the value of the stock to be ascertained in the way in which it best can be done, *i. e.* by a conversion of it into money. *Crawshay* v. *Maule,* 1 *Swans.* 506. 523. *Gow on Part.* 291, 2. 3 *Kent's Comm.* 37. Each party may insist, that the joint stock shall be sold, and if before a sale, the partner in possession of the capital continues to trade, with the joint property, he will be obliged to account with the other partner for the profits of the trade, subject to just allowances. *Crawshay* v *Collins,* 15 *Ves.* 218. and *Featherstonhaugh* v. *Fenwick,* 17 *Ves* 298.

*Sigourney v. Munn.*

For the before-mentioned reasons, the report of the committee cannot be accepted.

It is unnecessary, and would be premature, to express an opinion on the validity of the mortgage to *Holbrook.* As the facts in the case must undergo a re-examination, they may, on new lights obtained, receive such a variation from what they now appear to be, as to render any present opinion wholly unimportant. It will be sufficiently early to consider their effect when they are ultimately found.

LANMAN, J. was of the same opinion.

PETERS, J. dissented, on the ground that a sale of the partnership effects was not indispensable, in order to ascertain their value.

BRAINARD, J. was absent ; and DAGGETT, J. having been of counsel in the cause, gave no opinion.

Cause remanded for a rehearing.