*Litchfield,*
*July, 1849.*

Sherwood
*v.*
Barlow.

In this opinion the other Judges concurred, except WAITE, J., who was not present.

New trial to be granted.

## SHERWOOD *against* BARLOW.

In this state, a quit-claim deed is a primary conveyance, and vests in the releasee all the interest, even in fee, which the releasor possesses.

A school district, in the town of *M.,* had been, for more than thirty years, in the adverse, exclusive possession of a piece of land, on which they had erected a school house, and used it for the purposes of a school, during that period. *A,* the adjoining proprietor, claiming a title to the premises from his ancestor, executed his quit-claim deed thereof, to *B,* who received it, with the full knowledge, that the district was thus in the adverse possession of the premises. It was held, 1. that a quit-claim deed is an alienation, within the meaning of the statute against selling pretended titles; 2. that from a possibility of a dissolution of the district, *A* did not possess a reversionary interest, which he could convey by deed, as it did not appear, that the district held under a title derived from *A,* or his ancestor; 3. that the district, as disseisors, had acquired a perfect title, in fee, to the premises; 4. that *B* was liable to the penalty of the statute, for receiving the deed.

THIS was an action *qui tam,* founded on the statute against selling pretended titles, as it existed previous to the revision of 1849, to recover the penalty for receiving the deed.

The declaration alleged, that on the 10th day of *May,* 1847, the eleventh school district, in the first school society, in the town of *New-Milford,* in which district the plaintiff was then residing, was, and ever since has been, in the possession of a certain tract of land, lying in said *New-Milford,* and within the limits of said school district, bounded, &c., containing about eighteen square rods, with a school-house thereon standing ; the said district claiming to own the land

in fee, and holding it adversely to all others; that *Homer Waller*, of *New-Milford*, pretending to be the lawful owner of the land, and claiming a right to the same, did, on the 20th day of *May*, 1847, while he was ousted of the possession of the land, by the said district, attempt to alien the same to the defendant; and for that purpose, did then execute and deliver to the defendant, for the consideration of forty dollars expressed therein, a quit-claim deed, under his hand and seal, by him duly acknowledged, attempting to convey the premises to the defendant, while ousted thereof, by the possession of said school district; that the defendant, with full knowledge of all the foregoing facts, did receive the conveyance from *Homer Waller*, and afterwards caused the deed to be recorded; that the value of the premises was 500 dollars, one half of which the plaintiff was entitled to recover.

The cause was tried, on the general issue denying the truth of the plaintiff's allegations, at *Litchfield, February* term, 1849.

The plaintiff introduced evidence to prove, and claimed that he had proved, that said school district was legally organized, and for more than thirty years had used and occupied the land in question, by having erected thereon a school house, for the use of the school district, and by using the same, during all of said term, for the purpose of keeping and maintaining therein a district school; and that the district had never, at any time during said period, acknowledged or recognized the right or title of any other person to the premises. The plaintiff also claimed to have proved, that said school district had the exclusive possession of the premises, at the time the deed was executed by *Homer Waller*, and received by the defendant; and that this was well known by the defendant. It was also proved, that the premises described in the deed to the defendant, are the same as those possessed and claimed by the district.

The defendant thereupon introduced, and read in evidence, a quit-claim deed of the premises and lands adjoining thereto, from the heirs of *Peter Waller* to *Homer Waller*, dated the 17th day of *November*, 1831, which deed was duly executed and acknowledged. It was agreed, that *Homer Waller* was also one of the heirs of *Peter Waller*. The defend-

ant thereupon claimed, that *Homer Waller* was the sole owner of the premises, by virtue of his deed from said heirs, at the time the premises were conveyed by him to the defendant ; that he hàd therein such an interest, that he could lawfully convey or release the same to the defendant ; that the defendant, by receiving the conveyance, had not incurred the penalties of the statute ; and he asked the court so to instruct the jury.

The court did not so charge the jury ; but instructed them, that if they found the facts, as claimed by the plaintiff, the defendant was liable under the statute, notwithstanding the claim so made by him.

The jury returned a verdict for the plaintiff ; and the defendant thereupon moved for a new trial for a misdirection.

*J. H. Hubbard* and *F. Bacon*, in support of the motion, contended, 1. That a quit-claim deed is not an alienation, within the meaning of the statute against selling pretended titles. It is a mere relinquishment of such interest as the releasor may have in the premises ; and can only operate as an estoppel against him. It cannot be said, that the releasor, by the mere act of relinquishment, makes claim to the land, which is necessary to constitute maintenance. 4 *Kent's Com.* 446. *Livingston* v. *Peru Iron Co.*, 9 *Wend.* 511. *Emerson* v. *Goodwin*, 9 *Conn. R.* 421. *Caldwell* v. *Sigourney*, 19 *Conn. R.* 48.

2. That if *Homer Waller* had, at the time of the conveyance to the defendant, an interest in the land, whether vested or contingent, which was not inconsistent with the possession of the school district, then his deed is not void. It is apparent, that he had, at least, a contingent interest ; as he acquired an interest in the premises, by descent from his ancestor, and the conveyance to him from the other heirs of his ancestor. The school district could not, by occupancy, acquire the *exclusive* possession of the soil. A school district cannot purchase and hold lands, except for *school* purposes. 4 *Bac. Abr.* 490. *Rev. Stat.* 304. *Sutton* v. *Cole*, 3 *Pick.* 232. *Emerson* v. *Goodwin*, 9 *Conn. R.* 421.

3. That it does not appear, that the district claimed the premises, under any deed, or paper title ; and their right must be limited to the occupancy. As the district could

*Litchfield,*
July, 1849.

Sherwood
*v.*
Barlow.

occupy only in a restricted manner, and for a limited purpose, *Waller* had a right to occupy for every other purpose, consistent wih the possession of the district. He might depasture the ground, at least, in a season of vacation in the school. Upon the abandonment of the possession for school purposes, or upon the dissolution of the district, the property must revert to him, as he derived title from the original grantor. As it does not appear that the district occupied under a claim of the entire title, it will be presumed, that the possession of the district was consistent with an interest in *Waller,* which his quit claim deed was adapted to convey. *Jackson* d. *Gilliland* & al. v. *Woodruff* & al., 1 *Cowen,* 276. *Jackson* d. *Young* & al. v. *Camp, Id.* 605. *La Frondais* v. *Jackson* d. *Smith* & al., 8 *Cowen,* 589. *Jackson* v. *Warford,* 7 *Wend.* 62. 2 *Kent's Com.* 282. 307. 309. *Colchester* v. *Seaber,* 3 *Burr.* 1868.

4. That a school district is not a *person,* capable of committing ouster, within the meaning of the statute. The statute contemplates natural persons only. As the statute is highly penal, it must be construed strictly ; and it must appear, that there was an intention, on the part of the defendant, to purchase a *quarrel,* or pretended title, before he can be subjected to its penalty. *Daggett* v. *State.* 4 *Conn. R.* 60. *Leonard* v. *Bosworth, Id.* 421. *Gunn* v. *Scovill,* 4 *Day,* 234. 1 *Sw. Dig.* 69.

*Sanford,* contra, insisted, 1 That the quit-claim deed from *Waller* to the defendant, was an instrument, by which, he attempted to alien the land in question to the defendant. The motion states. that the defendant claimed, that *Waller* was the "*sole owner* of the land ;" the deed is of all his right ; and therefore, an attempt was made to alien the whole. A quit-claim deed is an appropriate instrument, to pass a present interest, and a fee. It is an original conveyance. 1 *Sw. Dig.* 133. *Nichols* v. *Hotchkiss,* 2 *Day,* 125. *Smith* & ux. v. *Pendell,* 19 *Conn. R.* 107. 113.

2. That *Waller* was ousted, by the entry and possession of the district. For more than thirty years, the district had been in the exclusive occupation of the land, claiming it as their property. They had erected their school-house thereon, and had used it during that period, acknowledging the

right of no other person to the property. During the first fifteen years, *Waller* might have maintained ejectment, if he was the sole owner of the property. He must therefore have been ousted. 3 *Bla. Com.* 167. 169. *Allyn* v. *Mather*, 9 *Conn. R.* 114. 1 *Sw. Dig.* 505. *Giddings* v. *Canfield*, 4 *Conn. R.* 482. *Litt. sec.* 279.

3. That the estate of a corporation, during the existence of the corporation, is a perpetual estate, equivalent to a fee. And the law allows it to be a fee. The corporation has an absolute, unlimited *jus disponendi.* 1 *Sw. Dig.* 77. 2 *Bla. Com.* 109. 4 *Kent's Com.* 7. 2 *Kent's Com.* 281. 282. *Stat.* 1841, *ch.* 40. *sec.* 16.

4. That *Waller* had no interest or estate in the premises, vested or contingent. Even if the estate of the district was a qualified fee, there was nothing left in *Waller*, upon which a deed could operate. A mere possibility of estate, can neither be granted, devised, nor released to a stranger. A contingent remainder cannot be granted, or assigned, to a stranger. 4 *Kent's Com.* 10. & seq. 348. *Smith* & ux. v. *Pendell*, 19 *Conn. R.* 111.

5. That the title of the district was an absolute estate in fee-simple. The fact that *Waller* owned the land, if it were so, before the district acquired such title, is altogether unimportant; nothing was left in him. He and the defendant knew it; for they are presumed to know the law.

*Seymour*, on the same side, was stopped by the court.

ELLSWORTH, J. It appears, in this case, that the eleventh school district in the first school society in *New-Milford*, at the time *Homer Waller* executed the deed in question to the defendant, was, and for more than thirty years had been, in the adverse exclusive possession of the premises. How this title and possession at first began in the district, does not appear; but enough appears, to show that, as disseisors, they had as perfect a title as is known to our law. They could use the land, and alienate it, in fee, with covenants of seisin and warranty; and neither the *Wallers*, nor any one else, could complain of such acts, or object to the validity of the deed. Under these circumstances, on the 20th of *May*, 1847, and while the district was so in possession, the defend-

ant received from *Homer Waller* a quit-claim deed of the premises, in common form, having full knowledge of the adverse possession. It would seem to be too clear to admit of doubt, that the transaction is criminal, in view of the statute; but the defendant insists, that the case is clear in his favour, and places his defence on two grounds : first, that a quit-claim deed is no *alienation* of land; and secondly, that the district had only a qualified interest in the land; there being, as he says, in the *Wallers,* a reversion on the possible dissolution of the district; a reversion of which the *Wallers* were not disseised; and they could, therefore, sell and convey it. We think there is no force in either claim.

In this state, a quit-claim deed is a primary conveyance, vesting in the releasee all the interest, even in fee, which the releasor has so conveyed. As a *conveyance,* it is of as much force as a warranty deed, differing from it chiefly in the super-added covenants, which may operate, by way of estoppel, upon a future acquired interest, or may secure the covenantee against a bad or defective title. It is otherwise in *England.* There, a release deed is not a primary conveyance, but it enures only to enlarge an estate already vested. Different views prevail here. 1 *Sw. Dig.* 131. *Dart* v. *Dart* & al., 7 *Conn. R.* 250. *Smith* & ux. v. *Pendell,* 19 *Conn. R.* 107.

But further, the statute forbids all "*attempts*" at alienation. Its language is, "and every person who shall attempt, by an instrument in writing under his hand, to alien any lands, or tenements, of which he is ousted, and every person who shall receive such a conveyance, &c., shall forfeit," &c. The motion says, the defendant claimed, that *Homer Waller,* when he executed the deed, was the *sole owner* of the land, and could convey his interest in it; and we think he "*attempted*" to convey that entire interest; and hence, it is not true, as claimed by the defendant, that *Waller* attempted to convey, and the defendant attempted to receive, a mere possible reversionary interest. Indeed, there is no such interest, in this case. The argument is, that *Waller* owned the fee of the land, and the district had a right to occupy only, while they used it for schooling purposes; so that if the district should be dissolved, the fee would revert to *Waller.* The answer to this argument, is, that there is no evidence the

*Wallers* ever owned, or pretended to own, the land in question; nor that the district held under the *Waller* title. The district did not hold a qualified or temporary right, under any one; but an absolute and unqualified one. For thirty years, they held as disseisors, so far as we can judge, and thereby, in fifteen years, acquired a perfect title in fee. *Price v. Lyon* & al., 14 *Conn. R.* 291.

It may be true, that land granted for a specific purpose, will revert to the grantor, or his heirs, upon the failure of that purpose; but if such a possibility could be assumed, in the case of an admitted grant to a school district, and such an interest could be granted by deed, which we by no means admit, there is no foundation laid for the application of such a principle to this case. The attempt by *Waller*, was, to convey the entire interest; and the notion of a reversionary interest, is an after-thought, got up by the defendant, to ward off the consequences of his own misconduct.

We do not advise a new trial.

In this opinion the other Judges concurred, except WAITE, J., who was not present.

New trial not to be granted.