Fithian, J.
(dissenting). On the first trial of this case the defendants, to show title out of plaintiffs, offered in evidence the record of the proceedings had in the Supreme Court to dissolve plaintiffs’ incorporation, and authorize a sale and trans fer of its property. The Justice at Circuit excluded all evidence of these proceedings, on the ground that such evidence was immaterial and constituted no defence to the action, in that the Supreme Court had exceeded its authority in ordering a dissolution of plaintiffs’ corporation in directing a conveyance of plaintiffs’ property to the defendants, instead of a sale in market for money, and in ordering the proceeds, after payment of incumbrances, to be paid to defendants. Accordingly, the Justice ordered judgment for the plaintiffs. The General Term, on appeal, reversed this decision, ordered a new trial, and held that the record of the proceedings in the Supreme Court should have been admitted in evidence, for that the record on its face, uncontradicted, was sufficient to give the Court jurisdiction, and that the Court did not exceed its authority in the premises.
This is all, as I understand it, the Court on the first appeal did or could attempt to decide. The case, as it now appears, contains much additional evidence, and,, in my opinion, raises important questions not before considered by the Court.
*126 On the second trial, the Justice before whom the case was tried, after admitting in evidence the record of the proceedings of the Supreme Court, permitted (and I think correctly) evidence to be given on the part of plaintiffs, not offered on the first trial, showing, I think quite satisfactorily, that the proceedings had in the Supreme (?om-t to dissolve plaintiffs’ corporation, and to sell and dispose of its property, were instituted and prosecuted by the trustees without the authority and against the will of a majority of plaintiffs' corporators; that the meeting of the 29th of September, from which the “ trustees ” seek to derive authority for instituting the proceedings in the Supreme Court, was called without legal notice or authority, and attended by a small minority only of plaintiffs’ corporators; and thus contradicting substantially the allegations in the petition in these respects.
The Justice at Circuit, however, found as a fact, among other findings, that the proceedings of the corporators’ meeting of the 29th of September, 1862, and the meeting of the “ trustees ” of the 1st of October, 1862, were severally “duly called and convened.” But he does not find as a fact, that the proceedings of either of these meetings were attended, or assented to, by a majority of the plaintiffs’ corporators, or how or in what manner the meeting of the 29th of September was called. And he declines to find whether or not the papers called “ consent of pew holders ” and “ consent of pew owners ” contain the signatures of a majority of the corporators. To such refusal to find, plaintiffs’ counsel excepted. If the facts, therefore, are material, the refusal to find as requested was error.
The Justice found, as matter of law, that the title to the property in question was in the defendants, and that they were entitled to a judgment of confirmation of their title.
In my opinion, the evidence given, and the rulings' of the Judge on the second trial, raise important jurisdictional questions, which were not and could not have been considered on the former appeal.
And these questions are, whether upon the undisputed facts in *127 the ease it is not made affirmatively to appear that in the proceedings to authorize the sale and conveyance of plaintiffs’ real estate the Court never obtained jurisdiction of the body corporate of the plaintiffs, and consequently the proceedings were coram non judice, and the conveyance authorized thereby void.
That the jurisdiction of any Court exercising authority over a subject may be inquired into in and by every other Court where the proceedings of the former are relied upon is well settled (1 Peters’ U. S. Rep., 328 ; 8 N. Y. R., 254 [4 Selden] ; 12 N. Y. R., 156 ; 6 Barb., 607).
I deem it immaterial to inquire whether, independently of any statute on the subject, a religious corporation could convey its real estate. For it is conceded that corporations organized under the act of 1813 can only convey by the permission of the Supreme Court first had and' obtained in the manner prescribed by the statute.
In respect to religious societies, incorporated under the provisions of the last-mentioned act, it is settled by the court of last resort that they are civil corporations aggregate, and that the “ body corporate ” is the “ male members of full age belonging to the church, congregation, or society, who statedly attend divine worship in such church, and who contribute to its support and that the title to all the corporate property (unless expressly otherwise held in trust) is vested in such “ body corporate and that the so-called “ trustees ” are only officers or agents to care for and manage the corporate property for the use and benefit of the corporation (Robertson v. Bullions, 1 Kernan’s R., 243; People v. Fulton, ibid, 94).
In my opinion, the general power and authority of officers or agents of a corporation do not extend to authorize them to dispose of, by sale, the real estate nf the corporation, or institute any proceedings for that purpose, unless expressly empowered so to do by the charter, or by the express or implied authority of a majority of the corporators. I am aware that there has been some conflict of decisions on the subject, but I think the weight of authority is as above stated, and that the opposite *128 opinion is inconsistent, not only with the letter and spirit of the act of incorporation, but with well-settled general principles.
In ascertaining the general power and authority of officers and agents of a corporation, derived simply from their appointment as such, regard must be had to the character of the corporate body and the object and purpose of its corporate existence, and, that being ascertained, it then becomes the duty of its officers so to manage its affairs as to promote its prosperity and welfare, and advance and subserve the general purposes and designs of its incorporation; and any act of its officers intended or calculated to destroy the corporate body or subvert or defeat the objects and purposes of its corporate existence, or destroy or substantially impair its_ usual and ordinary business, will be held unauthorized and void, unless the authority to do the particular act is found in the charter, or expressly or impliedly authorized by the body of the corporators themselves, either in the form of by-laws^ rules, resolutions, or other act evidencing assent (Robbins v. Clay, 33 Maine R., 132; Angel on Corporations, sec. 480 ; Malborough Man. Co. v. Smith, 2 Conn. Rep., 579; Abbott v. The American Hard Rubber Co., 33 Barb., 578, and authorities cited). And so far was this principle carried, that in the case last cited a sale by the directors of all the.personal property of a manufacturing corporation, so as thereby to prevent the prosecution of the particular business for which the corporation was organized, was declared unauthorized and void, as against a non-consenting stockholder, although assented to by the holders of a majority of all the capital stock, and this, notwithstanding the corporate body was left intact with its factory and real estate, well adapted to the prosecution of other business. It is true that this was a case of a jovrit-stooh corporation, and rose between a non-consenting-stockholder and the purchasers of the property. But the principle decided is applicable to all corporations alike, viz., that the general power of the officers and agents does not extend to do such a thing, and that the act would be held void whenever and wherever questioned. And this upon the principle that such suicidal acts were not within the scope
*129 and purview of the general corporate powers of the body corporate.
If I am correct in this, the next inquiry is, whether there is to be found any authority, express or implied, in the act of incorporation, authorizing the “ trustees ” to “ apply ” to the Court for leave to sell the real estate of the corporation.
The language of the statute is, that “ it shall be lawful for the Chancellor (Court), upon the application of any religious corporation, to make an order of sale,” &c. It is the application of the “ corporation,” and that alone, which confers upon the Court jurisdiction to proceed in the premises. But it is said the “ corporation ” can only act through - its agents. True, but these agents must be thereunto duly authorized in some way so to act, and" the inquiry is whether these particular agents can find any warrant of authority in the statute, of their own volition to put the “corporation” into court by making in its name the “application ” to sell its real estate. The powers and authority of the trustees in respect to the property and temporalities of the church are defined and specified in the fourth section of the act with more than usual particularity; and it will be seen that they are, with one' ex- . ception, powers of custody, management, and accumulation merely. They may have the “ custody ” of all “ temporalities,” enumerating many of them. They may collect all “debts and demands,” and assert and defend all “ rights and privileges,” in church property, may “purchase and hold" other additional “real and personal” property, and “ demise, lease, and improve” the same for the “ use of the chiorch,” &c. They may erect “ buildings for ministers,” “school-houses,” and other buildings for like “ use of the church ” (not for sale); and may “ make rules and orders for managing the temporal affairs of the church.” It will be seen that in all these carefully and specifically enumerated powers there is not a word expressing or implying a power to sell and dispose of property. They are powers coupled with a duty to Tceep and accumulate for the “ use ” of the church, and which duty would be violated by an attempt to sell *130 and dispose of, so as to deprive the church of the “ use ” of its temporalities. The statute, however, is not silent on the subject of “disposition.” It has left nothing to implication. It has clothed the “ trustees ” with power to purchase lands and “ erect, repair, and alter” buildings; and in order to provide means for' that purpose, they are expressly empowered to “ dispose of all moneys belonging to the church.” If the general powers above specified were understood by the legislature to include the power of disposition, why expressly confer it as to “ moneys ” ? On the contrary, if the power to sell and dispose of was not intended to be included in the general powers, it was quite necessary to confer it specifically as to money. The maxim “ Exypressio unius, exdusio alterius” applies here. Even the power of disposition of money is so far restricted by the 8th section, as to prevent'the trustees from fixing the “minister’s salary.” It seems to be the manifest intent of the statute, clearly deducible from its language, to protect these religious corporations against the exercise of any such authority as is claimed for the trustees in this case; the reason of which is to be found in the nature and character of these corporate bodies, and the reason and object of their creation. These societies are voluntary associations of Christians, associated, together for the purposes of divine worship, in accordance with such creeds and tenets, religious observances, and forms of church government, as to them should seem meet. And to that end it is necessary they should possess and control property and temporalities sufficient to provide and maintain a house of worship, and such accessories as are requisite and proper for the support and maintenance of their religious observances and practices. For this purpose the civil power has enabled them to become incorporate, to have perpetual succession, and to take and hold property dedicated and set apart for such religious “ uses ” only / not for sale or traffic, or any secular use or purpose. There is no provision for the volnmimy dissolution of such corporations, and they are expressly excluded from the operation of general statutes of the State, providing for the *131 voluntary dissolution of corporations, on the application of directors or officers.
The idea appears to he, that property once vested in a religious corporation, for religious uses, is solemnly dedicated to the service of God, in such mode and manner, and with such forms of worship, as the corporation shall choose (not inconsistent with the law of the land, and the general public policy of the country).
It is clearly the intent of the statute to withhold from these religious corporations that general power of sale and disposition of its property which is incident to other civil corporations, organized for the prosecution of secular affairs, and to confer this power on religious corporations only for special occasions and to meet particular emergencies, and not even then without the sanction and approval of the Court first had and obtained. Hence, whenever the occasion arises where the religious “ uses ” above stated may be subserved by a sale of the real estate of the corporation, it is provided, in the incorporating act, that whenever such corporation may desire to sell its real estate, such “religious corporation” (not its officers) may apply to the Supreme Court for an order permitting such sale. And the statute then immediately proceeds to clothe the Court with power to “ direct the application of the moneys arising from such sale, by the corporation, to such uses as the same corporation, with the consent and approbation of the Court, shall conceive to be most for the interest of the society to which the real estate so sold did belong thus precluding the possibility of the church property, or its proceeds, being in any manner disposed of, except by the particular and, specific action .of the “ corporation ” itself. The “ trustees ” may; manage and hold, buy and build, alter and repair, lease and demise, but it is the corporate body only that can sell and dispose of :the realty, and that only with the consent of the Court.
There is, therefore, nothing to be found .in the act of incorporation which does expressly, or by implication, confer authority lip on the trustees to make “ application ” to sell the church property; and aside from the proceedings of the meeting, here *132 after referred to, it is not pretended that there is any by-law, regulation, resolution, or other act of the corporate body itself, conferring such authority in this case. These provisions and considerations seem to me wholly to preclude the idea of there being any power or authority in the officers of a religious corporation, of their own motion, to take or institute any proceedings whatever for the sale of the real estate of the corporation, unless especially thereunto authorized by the corporation itself.
I am not without authority for this conclusion. The case of the Malborough Manufacturing Co. v. Smith (2 Conn. Rep., 579), above cited, is in point on this question. It was there held, that a joint resolution of the Legislature of the State of Connecticut, increasing the power of the directors of the corporation, procured on the application of the directors alone, without the consent or knowledge of the body of the corporators, was null and void. This joint resolution authorized the “ corporation ” to do certain acts (making assessments upon stock) which by its original charter it was not authorized to do. The Court further held, that even if the joint resolution were held valid, it did not authorize the directors to do the acts, and that an assessment by the directors, without other authority, did not bind the body corporate, or any stockholder who might dissent; or, in other words, the Court held to the principle, that where a special power is conferred by statute upon a “ corporation,” eo nomine, to do some act not within the scope and power of its general corporate powers, such special power can only be exercised by officers specially thereunto authorized by the corporate body.
The only remaining question is, Had these “ trustees ” any express authority from the corporate body; or does any circumstance appear in evidence from which this Court can rightfully and legally imply an authority to the “ trustees ” to institute and prosecute the proceedings to sell the real estate and dissolve the corporation?
The act of incorporation provides for the ascertainment and registration'of all such persons as shall from time to time become corporate members in these religious corporations. This registry *133 is to be kept by the Clerk of the Board of Trustees, and is accessible to and within the control of the trustees at all times. In these corporations for religious “ uses” (differing from moneyed or joint-stock corporations), the rights, interests, and power of all the corporators are equal, as between themselves. So that the poor and humble Christian, who contributes his “ penny,” possesses the same power and authority, and is entitled to the same consideration, as the millionaire who contributes his thousands. This is entirely in accordance with the spirit and teachings of the “Master,” whose precepts and example these “corporators” profess to follow. It appears in evidence, and is not controverted by a finding of the Court to the contrary, that the number of the corporators in plaintiffs’ corporation, at the time the proceedings in question were instituted, was “ eighty.” Of these eighty, it appears that “ thirty-one ” only gave consent to the trustees’ proceedings. The trustees had the authority and approval of but “ thirty-oné ” of the “ eighty ” corporators to do acts which required the specific approval of the “ corporate body.” Ordinarily this would dispose of the question of authority at once; but here it is attempted to raise an implied consent by way of “ estoppel” against the other “forty-nine” ' corporators (the great body of the corporation), by and through the proceedings of a church meeting held in the plaintiffs’ church on the 29th of September, 1862, at which, among other things, it was resolved^ that the trustees be directed to petition the Court for the sale of the plaintiffs’ real estate.
The effect given to this meeting and its proceedings renders it necessary to examine with some particularity the law and facts with regard to it. The meeting was held on Monday evening, September 29,1862, pursuant to the following call, read from the pulpit on the preceding day, viz , “A meeting of the church and congregation will be held in the chapel to-morrow evening, at 7-|- o’clock, for the purpose of authorizing the trustees to take the proper legal steps for effecting our union with the Oliver street JBa/ptist Ohurch.” It will be observed that this call was for the whole body of the church and congregation, *134 and not particularly a corporate meeting. There is no evidence as to when or where, or by whom, this call was read, except it was on Sunday, from the pulpit. Whether by the minister, during divine service, and to the whole congregation,' or by some private person to an empty church, does not appear. The Justice, in the settlement of the case, was requested by plaintiffs’ counsel to find as a fact, among other things, how many corpora-tors attended and "took part in the proceedings of this meeting. The Justice refused to find on the subject. I deem this a material matter, and as the Justice declined to find upon it, I shall assume that, if he had made a finding, it would have been in favor of the evidence as claimed by the plaintiffs on this argument ; especially, as in his eighth finding of fact the Justice finds that the statement in the trustees’ petition “ that the plan and terms of the projected union (of the two churches) was agreed on by a joint committee, appointed by the corporatebodies respectively,” was shown to be wntrue. The plaintiffs’ evidence in substance shows that at'this meeting there were only twenty-one • corporators present. There was at best but one day’s notice of the meeting. Assuming the notice'to have been read in open meeting, it could be notice only to such corporators as happened to be present. The language of the call gave no intimation that any thing was to be done respecting the sale of real estate. It was to take legal steps for “ effecting the union ” with the Oliver street Church. Yet “ seventeen ” of the “ twenty-one ” corporators present at this meeting proceed by resolution to direct the trustees to take proceedings to dissolve the corporation, and dispose of all its property. And it is from the proceedings of such a meeting, thus called, and thus held and attended by scarcely one fourth of the corporators, that the requisite authority is sought to be derived to sanction the act of the trustees in their proceedings to destroy this religious corporation, sell all its real estate, including its house of worship, and merge its congregational identity into a different and larger body. Certainly, when such power and authority are asserted for the voluntary assemblage and action of less than one quarter of the *135 members of the corporate body, some statute, or by-law, or established rule or regulation should be produced -to sanction the claim. None such has been or can be produced. The act of incorporation provides for holding’ corporate and church meetings for two purposes only; one of these is for the annual election of trustees, as to which the statute provides with some particularity the mode and manner of calling it, what notices aré to be given, how it shall be organized and conducted, and who. shall vote, and the qualifications of voters. The other purpose for which a meeting of the church and corporation may be held is to fix and determine the amount of the minister’s salary. There is no provision in the act as to the mode and manner of calling, organizing, or conducting a meeting specially held for the latter purpose, and for the reason, probably, that this matter of the minister’s salary could and ordinarily would be attended to at the annual meetings for the election of trustees; and that the necessity for calling or holding a special meeting, for such purpose, would seldom, if ever, arise; and for the still better reason that the statute expressly requires that the “ minister’s salary” shall be fixed and ascertained by a “majority of persons-entitled to elect trustees.” That is, a majority of dll the corporators must concur in fixing the minister’s salary. Consequently, it was of little consequence how or in what manner, or when or where, this majority assembled for that purpose, inasmuch as a meeting of less than a majority of all would be without authority; no matter how formal, particular, or extensive were the call and notice of such meeting; it was therefore useless to prescribe rules for calling such a meeting, while a meeting and concurrence of a majority would be effectual, no matter how called or noticed. The trustees, however, can be elected “byplurality of voices.” Hence the necessity in meetings for that purpose to prescribe rules for their calling, notice, assembling, and conduct, to the end that the “ plurality of voices,” however small in proportion to tire whole, may bind the whole. Except for the purposes above, mentioned, and in the mode and manner prescribed as above, it is conceded there is no statute, by-law, rule, or *136 regulation whatever for convening or holding meetings of the body corporate. It would seem to follow, therefore, that if a meeting be convened and held for any other purpose, and in any other mode and manner, than that prescribed in the act, to have any binding authority or validity whatever it should be attended, and its proceedings participated in, by at least a majority of the corporators. It is true that in the case of People v. Peck (11 Wend., 604) the Court held that certain of the preliminary notices for the convening of the annual meeting for the election of trustees were directory merely, and not under all circumstances necessary to be complied with. But that case, it will be observed, was a controversy between two factions in the same church over the election of trustees; it being attempted by one faction, at the head of which was the minister, to unseat “ trustees ” declared duly elected, on the ground that the minister himself had omitted to give all the notices of the meeting required by the statute. In overruling this objection, the Court makes special mention and lays stress upon the conceded and undisputed fact that the meeting was attended, and its proceedings participated in, by every one of the corporators; and, inasmuch as the meeting was one authorised by the statute to be convened and held, and was held at the time prescribed by the statute, and inasmuch as the sole object and purpose of the preliminary notices were to give the corporators notice and opportunity to be present, and as they all were present, it might with great propriety be held that the object and purpose of the notices were in that case fully answered and subserved. The Court did decide, however, that the provisions of the statute in respect to the mode of organizing and conducting the meeting must be strictly observed and kept, and could not be departed from if a single corporator objected; and this, because a “plurality of voices,” though less than a majority of all, might elect. In every instance that has come under my observation where stockholders’ or corporators’ meetings, in civil or other corporations aggregate, are convened and held, they are so convened and held by authority conferred by some provision in the charter, or some by-law, *137 rule, regulation, or special resolution previously existing, and conceded to have the force of a charter provision. I have searched hi vain for any decision or “ dictum ” of any court or judge holding that a minority of the members of a body corporate, without any authority emanating from the charter or the body itself, can voluntarily assemble on such notice, and at such time and place, as to themselves shall seem fit, and do any act or take any proceeding which shall bind the corporation, or any" other person than themselves. And I cannot, therefore, assent to any proposition or any reasoning by which it is sought to sustain such a claim.
It is sought to avoid the force of these objections by general propositions, to the effect that the statute has authorized these corporators to apply to the Court for leave to sell their property; that corporations usually act by agents appointed at meetings, and, as the statute prescribes no method of calling such meetings, they may be called without notice, or on any notice, &c. But I deny in toto that corporations ever are or can be bound by the acts of officers or agents, unless the acts done are either within the scope and purview of the general power and authority of such officers, or are especially authorized by some rule or resolution of the corporate body; and further, that corporations never do or can act by or through meetings of a minority of the corporators, unless such meetings are expressly authorized to be convened and held' by some authority which is binding upon or has been assented to by all. If there be no such authority, then a majority at least must act or assent. And it is questionable, where the act sought to be authorized is one not within the scope of the general powers of the corporation, whether it is not necessary to have the assent of all the corpora-tors in order to bind all. Such is certainly the rule in reference to moneyed and joint-stock corporations. At all events, I am clearly of the opinion that without such authority the proceedings of a meeting, to be of any force or effect, must be participated in, or the meeting attended by, at least a majority of the corporators, and personal notice (or its equivalent) must be given *138 to all the corporators,' of the time and place and object of the meeting (Wiggin v. Freewill. Baptist Society, 8 Met., 301; Stow v. Wise, 7 Conn., 19).
The learned Justice at the Circuit finds as a fact that the meeting of the 29th of September was “ duly called and convened.” The finding is general. The Judge could not have intended to find as a fact that the meeting was called by any charter or corporate authority for such purpose specially made and provided; because it is conceded there was no such authority It was doubtless intended merely as an assertion of the Judge’s conclusion that the mode and manner of calling and convening the meeting were such as to make it a meeting of the body corporate, sufficient in law to confer power upon the trustees to proceed. This I have endeavored to show was error.
The objection of the defendants’ counsel respecting the difficulty and inconvenience of personally notifying the corporators of the call for the September meeting, scarcely needs comment, in view.of the fact that the corporators were but eighty in all, residing in a small compass, their names registered, and their rights as corporators depending upon their “stated attendance upon divine worship” in that church. Neither do I consider it necessary to remark upon the effect to be given to the papers entitled “ Consent of pew, holders,” and “ Consent of pew owners.” It is substantially conceded, that these papers contained the signatures of but twenty-seven corporators, and it is 'not pretended that any authority for the proceedings of the trustees could be derived therefrom.
In conclusion, I desire briefly to notice the character of the proceedings to sell this church property. The petition was sworn to the 17th of October, 1862, and on the same day, without any order to show cause or notice of presentation or examination, save of the statements in the petition, the Court “ di/rected ” the trustees to convey all plaintiffs’ property to the “ Baptist Church in Oliver street.” And on the 21st of October this order was complied with by the execution, under its corporate seal and delivery of a conveyance to the last-named church, of all plain *139 tiffs’ property, real and personal, for the consideration of five dollars. And thereupon the existence of the religious corporation, known as the “ Madison avenue Baptist Ohurch,” was taken and considered to have ceased and determined. It seems to me clear, from the facts appearing in evidence, that these proceedings were consequent upon the agreement and action of a small number of the (probably influential) members of this corporation, and not in accordance with the deliberate judgment and desire of the whole -or even of a majority of the body corporate. It does not appear that the petition was seen or its contents known by a single corporator, save the two persons who. signed it. It does not purport on its face to be the “ application’’ of the “ corporate body.” It is the petition of the two persons who sign it, one of whom, designates himself “President,” and the other “Secretary” of the “Board of Trustees.” It purports to be the “petition-of the trustees,” &e. But it does not state the residence of trustees, or their names, and, except by inference, it does not appear that the signers of the petition were trustees even.
Were the question open to me on this appeal, I should not hesitate to hold that such a paper was not, and could not be taken to be, in any sense, the “application” of the “religious corporation” whose property it sought to affect, and that the petition was void and of no effect on its face, and all subsequent proceedings based upon it were likewise void. And further, that the Court exceeded its authority in the mode and manner of disposition, both of the realty and its proceeds.
This Court, however, on the former appeal, has held otherwise on these questions. And in that decision I so far acquiesce, that if there were no other questions in the case, I should vote for affirmance of the judgment, upon the ground of stare decisis. But I cannot concur, in opinion.
It is with regret and some diffidence that I feel constrained to dissent from the opinions of my learned and more experienced associates, but such are my convictions.
The judgment should be reversed, and a new trial granted.