## CHAUNCEY B. HEARTT *et al.*

### *v.*

## THOMAS WALSH *et al.*

1. PARTNERSHIP — *right of partner after dissolution to settle claim due firm.* Upon the dissolution of a partnership, in the absence of any agreement to the contrary, each partner may collect the debts and receipt therefor, and neither the insolvency of the partner receiving the money, nor the application he makes of it, alters the right.

2. SAME — *settlement in violation of an agreement to produce duplicate bills of sales.* Where one firm furnishing another with grain, in consequence of a discrepancy between the parties as to the precise quantity and price of

a few loads, it was agreed that for future loads the firm selling should send duplicate bills, the purchasing firm to retain one, and mark the other " correct," and return it by the teamster, it was *held* that as the sole object of this was to avoid disputes as to the quantity and value of the grain delivered, so long as the full amount of the grain delivered was settled for, it was immaterial whether the duplicate bills were taken and surrendered or not.

3. SAME — *settlement by partner not affected by his misapplication.* Where one partner makes a settlement of matters due the firm by taking a note for the sum due, his misapplication of the note will not invalidate the settlement unless fraudulently made by the other party to enable a fraud to be practiced on the firm.

APPEAL from the Superior Court of Cook county ; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. BENTLEY & QUIGG, for the appellants.

Mr. ALLEN C. STOREY, and Mr. RUFUS KING, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action brought by the firm of Walsh, Jewell & Co., composed of Thomas Walsh, Henry Jewell (who died prior to the trial), and John Smith, appellees, against appellants, Chauncey B. Heartt, Robert Heartt and August Steinhouse, then running a line of omnibuses in the city of Chicago, styled the "Lumberman's Bus. Line," to recover the value of certain grain sold and delivered by appellees to appellants during the winter and spring of 1872.

The defense interposed was, that on the 12th day of April, 1872, and after the dissolution of the firm of Walsh, Jewell & Co., Chauncey B. Heartt and Jewell made a final settlement of the accounts up to that time, and Heartt gave his individual note, intending thereby to bind his firm for the amount then due, six hundred and ninety-one dollars and sixty-one cents, payable to Walsh, Jewell & Co. sixty days after date ; and Jewell, in the name of the firm, executed a receipt in full to that date.  The note, before maturity, was transferred to

Steinhouse, and when it matured it was paid by Heartt out of the funds of his partnership and taken up. These facts were undisputed, except that appellees claimed there was a balance over and above the amount of the note given by Heartt, of fifty-five dollars and twenty-one cents due, on bills for grain furnished in the month of February, 1872, although a receipt in full for that month was introduced in evidence by appellants.

It was claimed by appellees, first, that the settlement between Heartt and Jewell was not binding upon appellees by reason of an understanding and agreement between the parties that payment should only be made upon the surrender of duplicate bills of the grain delivered, held by appellees, countersigned "correct" by A. Steinhouse, and which appellees claimed was not done in the settlement of April 12, 1872.

Second, That the settlement was fraudulently made to enable Steinhouse to collect an individual debt due from Walsh and Jewell to himself.

A verdict and judgment were rendered for the full amount claimed, and an appeal taken by defendants to this court.

It is insisted that the judgment should be reversed on the ground that the verdict is not sustained by the evidence.

It is not to be questioned that upon the dissolution of a partnership, each of the partners, in the absence of any agreement to the contrary, may collect the firm debts and receipt therefor ; and that neither the insolvency of the partner receiving the money, nor the application he makes of it, alters the right. *Gordon* v. *Freeman*, 11 Ill. 14; *Major* v. *Hawkes*, 12 ib. 298.

The settlement, then, of the account by Heartt with Jewell by note, and the latter's receipt for the account, and the subsequent payment of the note to the transferree of Jewell, sufficiently establish the defense of payment, unless appellees, by a preponderance of evidence, avoided it in one of the modes attempted, to wit: an agreement that payment should be made only upon the surrender of the duplicate bills of the grain, or collusion as claimed, on the part of Heartt.

The arrangement in regard to the duplicate bills seems to have been this: There having, at one time, been a disagreement between the parties as to the precise quantity and price of four loads of grain which had been previously delivered, it was agreed that for future loads appellees would send duplicate bills, they to retain one and appellants the other; Steinhouse to affix his signature to them as "correct," and, retaining one, send the other back by the teamster.

It would appear from the testimony that the sole object of having duplicate bills sent with each load of grain was to avoid dispute as to the quantity and value of the grain delivered. So long as the full amount of the grain delivered was settled and paid for, it would seem to be an immaterial circumstance whether the duplicate bills were taken up and surrendered or not. There is no pretense that the accurate amount of the grain delivered, and at the accurate price, was not settled for as purported, by Heartt with Jewell, with the exception of the before-named item of fifty-five dollars and twenty-one cents; but the claim is, that there was no authority to make the settle-ment, except upon the condition of the actual surrender of the duplicate bills held by appellees. But the evidence entirely fails to establish any such limitation of authority to collect and receipt for the grain delivered.

Smith testifies that the supposed agreement was made between himself and Walsh and Heartt and Steinhouse, they being present. Steinhouse did not testify. Heartt denies that there was any such agreement. All that Walsh testifies to is, that Steinhouse told Smith he must have duplicate bills, and all that Smith himself says is, that appellants were not to pay without the duplicate bills. Smith testifies further, that after the disso-lution, on the 8th of April, he and Walsh applied to Heartt for payment of the account, and the latter not being then able to pay, he, Smith, remarked to Heartt that he hoped he would not pay any money until he took up the duplicate bills.

This is the sum of the testimony upon the point, and we find nothing in it to interfere with the right to make the settlement

that was made with Jewell, without the duplicate bills held by appellees being surrendered up.

As to the second attempted mode of avoiding the settlement with Jewell, and the giving of the note to him, that it was collusively done, as claimed, there is an equal failure of evidence to establish that.

There is no sufficient evidence that the note was misappropriated by Jewell to the payment of a claim which Steinhouse held against Walsh & Jewell. There is no evidence even of the existence of any such claim, more than the statement of Smith that he knew about a claim that Steinhouse professed to have against Walsh & Jewell. Walsh, who was a witness for appellees, testified nothing whatever in regard to any such claim. That the note might have been misappropriated to satisfy such a claim is merely surmise. Even if the note was so misappropriated by Jewell, that would not affect the settlement with Jewell, unless it was fraudulently made by Heartt for the purpose of enabling Steinhouse to collect an individual debt due from Walsh & Jewell to himself.

Heartt testifies that he knew nothing of any claim of Steinhouse against Jewell, and there is nothing in contradiction of his testimony. There is only ground of suspicion that there might have been such a collusive settlement, no sufficient evidence of it.

Heartt was the treasurer of the "bus" company, and made all its payments. Jewell did the collecting of appellees' bills. All former settlements and payments by appellants had been with and to Jewell.

The account sued on was settled with Jewell, a note given, and subsequently paid by Heartt. We think the evidence comes short of invalidating the defense of such settlement and payment, and that the verdict was very clearly against the weight of evidence.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*