### THE BANK OF MONTREAL

*v.*

### WILLIAM R. PAGE.

*Filed at Ottawa November 20, 1880—Rehearing denied March Term, 1881.*

1.  PARTNERSHIP—*of its duration and dissolution.*  If a partnership is formed for a single purpose or transaction, it ceases as soon as the business is completed, or whenever there is an end put to the business; and although a partnership is entered into for one year, it may be terminated by mutual consent at any time the partners may choose.

2.  When partners by resolution determine to cease doing business and wind up the same, and appoint one of their number, or a third party, to take charge of the property and accounts, and to dispose of the property and collect their accounts, this will amount to a dissolution of the partnership and a revocation of the powers of any other agent before that time acting for the firm.

3.  SAME—*powers of partners after dissolution.*  In the absence of stipulation to the contrary, in case of dissolution, every partner is left in the possession of the full power to pay debts, and collect debts due the firm, to apply

the partnership funds and effects to the discharge of their own debts, to adjust and settle the unliquidated debts of the partnership, to receive any property belonging to the partnership, and to make due acquittances, discharges, receipts and acknowledgments of their acts in the premises.

4. While the dissolution does not revoke the authority to liquidate, settle and pay debts already created, it operates as a revocation of all authority for making new contracts, and since the giving of a promissory note or the acceptance of a bill or draft is the making of a new contract, although it may be for a prior debt, a partner after dissolution can not 'thus bind the firm or authorize another to do so.

5. To hold the members of a partnership liable for commercial paper executed or accepted by direction of one member after the dissolution, on the ground that the person taking and discounting such paper in the late firm name and style had no knowledge of the dissolution, it must be shown that the members constituting the partnership were known to the person so discounting such paper previous to the time of taking and discounting the same, especially where the acceptance fails to show who composed the firm.

6. SAME—*acts of agent—whether binding.* Where one firm was indebted to another firm, and, after dissolution of the first, the former partners employed a member of the latter firm to close and wind up its business and pay its debts, and such agent, acting in behalf of his own firm, drew drafts in the name of his firm, payable to themselves, and procured a person who had before been the manager of the first firm to accept the same, supposing he had such authority, but not giving or attempting to give such manager any authority to accept for his principals, it was *held* that the first named firm was not liable on the acceptances, it appearing that such manager at the time had no authority to accept the drafts on behalf of his principals.

7. Although a partnership may exist in the name of one as lessee, who is merely the agent of the firm to transact a particular business, as, the manufacture of brick, and not a member of the firm, it will not be bound by such agent's making or acceptance of commercial paper, without direct and specific authority from the firm, or some member thereof before dissolution, or unless the firm or some member during the existence of the partnership ratified the act of such agent.

8. INSTRUCTIONS—*not based on evidence.* There is no necessity to state principles or make qualifications in instructions having no basis in the evidence upon which to rest.

9. PRACTICE—*reviewing evidence on appeal from Appellate Court.* Although on an appeal from the Appellate Court, this court can not review questions of fact to ascertain where the preponderance is, it is essential to examine the evidence to see if its tendency is such as to present a fair question of fact, to which mooted questions of law embodied in or omitted from instructions are applicable.

APPEAL from the Appellate Court for the First District ; —heard in that court on appeal from the Circuit Court of Cook county ; the Hon. JOHN G. ROGERS, Judge, presiding.

The Bank of Montreal brought assumpsit, in the circuit court of Cook county, against Gregg, Swift, Page, Bowen, Redfield, Talcott and Walker, as acceptors, under the name of " E. F. Knight, lessee," of two drafts that were discounted by said bank, which drafts, with their indorsements, are as follows :

" No. 3766.          REDFIELD, BOWEN & CO.,
                 Iron Merchants and Manufacturers,
          Sales-rooms, 112, 114 and 116 Lake Street.
" $1446.67.          .          CHICAGO, Dec. 20, 1875.
" On April 20th, 1876, pay to the order of ourselves, fourteen hundred and forty-six $\frac{67}{100}$ dollars, with exchange, with interest at the rate of ten per cent per annum after maturity.
          " REDFIELD, BOWEN & WALWORTH CO.
" To Mr. E. F. KNIGHT, Lessee,
     Room 2, 175 LaSalle St., Chicago.
     (Endorsed.)  " Redfield, Bowen & Walworth Co., F. A. Bowen, Treasurer.
     (Written across the face.)  "Accepted payable at ———
" E. F. Knight, Lessee."

" No. 3780.          REDFIELD, BOWEN & CO.,
                 Iron Merchants and Manufacturers,
          Sales-rooms, 112, 114 and 116 Lake Street.
" $2638.20.          CHICAGO, Jan. 15, 1876.
" On May 20th, 1876, pay to the order of ourselves, twenty-six hundred and thirty-eight $\frac{20}{100}$ dollars, with exchange, with interest at the rate of ten per cent per annum after maturity.
          " REDFIELD, BOWEN & WALWORTH CO.
" To Mr. E. F. KNIGHT, Lessee,
     Room 8, 175 LaSalle St., Chicago.

(Endorsed.)  " Redfield, Bowen and Walworth Co., F. A. Bowen, Treasurer.

(Written across the face.)  "Accepted payable at ———— " E. F. KNIGHT, Lessee."

Gregg and Swift were not served with process, and did not enter their appearance. The other defendants were served with process, and Page, Talcott and Walker pleaded, first, the general issue, and, secondly, denying the execution of the acceptances, and that they were partners with each other, under oath.  Issues were joined upon these pleas, and, the cause coming on for trial, the same were submitted to a jury, who returned a verdict thereon in favor of the defendants.  Motion for new trial was made and overruled, and judgment was, thereupon, rendered on the verdict.  From that judgment an appeal was prosecuted to the Appellate Court for the First District, and the judgment of the circuit court was, by the judgment of that court, affirmed.  The present record brings the last named judgment to this court for review.

The Bank of Montreal, the appellant, contends that the appellees, Page, Talcott and Walker, together with their co-defendants, Bowen, Redfield, Gregg and Swift, in May, 1875, associated themselves together as partners, to carry on, for one year, certain works for the manufacture of bricks, which works belonged to a company styled the " Excelsior Pressed Brick Company," and also to erect a kiln and burn bricks therein, under a certain patent belonging to another company styled the " Ceramic Gas Kiln Company;" that, pursuant to this purpose, one E. F. Knight was employed by the co-partnership as general manager, and to him was then executed a lease of the works of the " Excelsior Pressed Brick Company," and the business was entered upon and carried on in the name of " E. F. Knight, lessee;" that in November, 1875, a meeting of the partners was held, at which the defendant Bowen was appointed to take charge of the property and

accounts of the partners, then held by E. F. Knight, for the purpose of winding up the partnership business, with full power to act in the premises as attorney and agent for the other partners; that Bowen, pursuant to this appointment, proceeded, with the assistance of Knight, (who remained with him thus employed until after January 20, 1876), to sell the brick on hand and to break up and dispose of the iron work of the kilns, and get in the outstanding indebtedness of the partnership; that an indebtedness was incurred to the "Bowen, Redfield and Walworth Company," by the partnership, for material, work, etc., in constructing a kiln in which to burn the bricks by the process of the patent of the " Ceramic Gas Kiln Company," for which indebtedness drafts and notes were executed in August and September, 1875, and that the drafts, upon which this suit is brought, were accepted by Knight, by the direction and approval of Bowen, as renewals of those drafts and notes.

The appellees, on the other hand, deny that they were partners with each other or with their other co-defendants. They contend that they simply agreed to loan E. F. Knight $2500 each to enable him to lease and carry on the works of the "Excelsior Pressed Brick Company;" that they, together with the defendant Gregg, were stockholders and bondholders of the " Excelsior Pressed Brick Company," of which Knight had been superintendent, and the financial condition of which was bad; that Gregg and the defendants Redfield, Bowen and Swift, were, at the same time, stockholders and officers of the " Ceramic Gas Kiln Company," which company was the owner of what was considered a valuable patent for burning brick, and they were desirous to erect one of the kilns at some brick works in order to practically demonstrate the advantage of their patent; that Knight made a proposition to lease the works of the " Excelsior Pressed Brick Company," representing that if he could borrow sufficient money to pay off pressing liens, put the works in good shape, and have a small working capital, he could make brick enough

to pay the coupons that had matured and were maturing on the mortgage bonds of the "Excelsior Pressed Brick Company," repay the moneys loaned him, and, besides, make a comfortable living for himself; that, thereupon, they,—that is, the appellees,—after considering the proposition, each agreed to loan him $2500 for these purposes; that those engaged in the Ceramic Gas Kiln Company,—that is, the defendants Bowen, Redfield, Gregg and Swift, each agreed to loan a like sum for the purpose of having an opportunity to exhibit the efficacy of their patent kiln, which they proposed to erect, in burning bricks; that these loans were separate, individual loans, forming a separate liability of Knight, having no relation the one to the other; that Knight made a failure of the business, and, not having paid anything back to those who had advanced him the money, he offered to turn over what assets he had on hand, which proposition was accepted, and Bowen was appointed as trustee to receive these assets, sell them and pay each of those who had so loaned money to Knight, *pro rata,* as far as he could realize. It is denied by them that Knight was paid any salary, or that he was ever authorized to draw drafts, even if it be conceded that the defendants were partners, and they claimed that the materials that entered into the construction of the furnace were furnished upon the credit of the "Ceramic Gas Kiln" by the "Redfield, Bowen and Walworth Co.," and are properly chargeable only against that company.

It is further claimed, that even if Knight ever had authority to make acceptances for the defendants, that authority was revoked by the meeting of the defendants in November, 1875, at which the defendant Bowen was appointed to take charge of the property and accounts of the defendants, then held by Knight, for the purpose of winding up the business, and the partnership, if any theretofore existed, was dissolved, and hence, subsequent to that time, Bowen had no authority to

make acceptances, either by his own act or through Knight, which would be binding upon the defendants.

Mr. MELVILLE W. FULLER, for the appellant:

If the name of a principal is signed by an agent in the presence of the principal, and by his direction, this will be sufficient to bind the principal, though there be nothing on the face of the note to show the agency. *Morse* v. *Green*, 13 N. H. 32; *First National Bank* v. *Gay*, 63 Mo. 33; *Bingham* v. *Peters*, 1 Gray, 139; *Woodbury* v. *Moulton*, 47 N. H. 11.

Clearly, this must be so as to an acceptance in Illinois, in which State it is well settled that a parol promise to accept an existing, or even a non-existing bill, is binding. *Jones* v. *Council Bluffs Bank*, 34 Ill. 319; *Mason* v. *Dousay*, 35 id. 434; *Nelson* v. *First Nat. Bank*, 48 id. 36; *Scudder* v. *Union Nat. Bank*, 1 Otto, 406; *Mason* v. *Rumsey*, 1 Campb. 384.

If there is a partnership, the members of which are *known* to a party who discounts the partnership paper after a dissolution of which he is ignorant, the paper is binding on *all* of the partners, irrespective of the question whether *some* of them held themselves out as partners or not. Parsons on Partnership (2d ed.), 431, 416.

Where negotiable paper is given for a transaction outside of the scope of a partnership, it will bind, if the proceeds are received and held by the firm. *Richardson* v. *French*, 4 Metc. 577; *Jaques* v. *Marquand*, 6 Cow. 497; *Whittaker* v. *Brown*, 11 Wend. 75; *Clay* v. *Cottrell*, 18 Pa. 408; *Thick-russe* v *Bromilow*, 2 Cromp. & J. 425.

It is settled law in this country that it matters not that the defendants meant not to be partners at all, and were not partners *inter sese*. They may be partners as to third persons notwithstanding. *Manhattan Brass Co.* v. *Sears*, 45 N. Y. 797; *Leggett* v. *Hyde*, 58 N. Y. 278.

Messrs. HUNTER & PAGE, for the appellee:

It is a well settled principle of law, that an agent has no authority to make or accept commercial or negotiable paper for his principal, without direct and specific authority from his principal. 1 Daniel on Negotiable Instruments, 220; Byles on Bills, 32; *Sewanee Mining Co.* v. *McCall,* 3 Head, 619.

A general authority to *transact business* for the principal will not authorize the agent to bind him as a party to negotiable paper, according to the general principles of the law of agency. 1 Daniel on Neg. Instr. 220; *Paige* v. *Stone,* 10 Metc. 160; 1 Parsons on Notes, etc. 196, 106; *Hogg* v. *Snaith,* 1 Taunt. 347; *Hay* v. *Goldsmith,* 2 J. P. Smith, 79.

Authority to an agent to make purchases of goods and supplies and pay for them, or to buy and sell goods for a trading company, does not authorize the giving of a note or acceptance of a draft for the amount. *Brown* v. *Parker,* 7 Allen, 339; *Tabor* v. *Cannon,* 8 Metc. 456; *Rossiter* v. *Rossiter,* 8 Wend. 494; *Emerson* v. *Providence Hat Manufac. Co.* 12 Mass. 237; *Scott* v. *McClellan,* 2 Greenlf. 199.

An agent for attending and managing a grocery and provision store is not authorized in consequence of such agency, to indorse notes in the name of his principal. *Smith* v. *Gibson,* 6 Blackf. 369; 1 Parsons on Notes, etc. 116 (n. 3); 1 Daniel on Nego. Instr. 221.

A partner's authority to sign the partnership name to commercial paper ceases with the dissolution of the firm, even as to pre-existing indebtedness, and without such authority he can not authorize another to do so. 2 Bell's Com. 644; Collyer on Part. sec. 541; 1 Daniel on Nego. Instr. 278; 1 Parsons on Notes and Bills, 145; *Abel* v. *Sutton,* 3 Esp. 110; *Pindar* v. *Wilkes,* 5 Taunt. 612; *Kilgour* v. *Finlyson,* 1 Henry Black. 155; *Bank of S. Carolina* v. *Humphreys,* 1 McCord, 389; *Sanford* v. *Mickles,* 4 Johns. 224; *Lansing* v. *Gaine,* 2 id. 299; *Bank of Port Gibson* v. *Baugh,* 9 Sm. & M. 290; *Mitchel* v. *Ostrom,* 2 Hill, 520.

Nor will authority to give or renew a note be implied by authority to settle the business of the firm and sign the partnership name for that purpose, or to settle the partnership concerns, or to wind up the affairs of the firm, or any similar authority. 1 Daniel on Nego. Instr. 280; *Perrin* v. *Keene,* 19 Me. 355; *National Bank* v. *Norton,* 1 Hill, 572; *Parker* v. *Cousins,* 2 Gratt. 373; *Long* v. *Story,* 10 Mo. 636; *Palmer* v. *Dodge,* 4 Ohio St. 21; *Abel* v. *Sutton,* 3 Esp. 110.

A partner, after dissolution, can not put the partnership name upon negotiable paper so as to bind the other partners, even though such paper be given in settlement of subsisting partnership liabilities, or to renew outstanding partnership notes or drafts. *Perrin* v. *Keene,* 19 Me. 355; *National Bank* v. *Wharton,* 1 Hill, 572; *Parker* v. *Cousins,* 2 Gratt. 373; *Haddock* v. *Crocheron,* 32 Texas, 276; *Palmer* v. *Dodge,* 4 Ohio St. 21.

This court, on appeals from the Appellate Court, is prohibited from examining questions of fact, except in certain specified cases. And when an instruction is given, it will be presumed, unless the certificate of the Appellate Court is to the contrary, that there was evidence upon which to base it; and where an instruction is refused, it will be presumed that the facts do not require it, unless the certificate shows a different state of case. *Wabash R. R. Co.* v. *Henks,* 91 Ill. 406; *Gravett et al.* v. *Davis,* 92 id. 190; *Laird* v. *Warren,* id. 204; *Aurora* v. *Pennington,* id. 564; *Carr* v. *Miner,* id. 604.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Appellant contends that the fifth instruction given by the circuit court, at the instance of appellees, is erroneous. That instruction is as follows: " The jury are instructed, as a matter of law, that if they believe from the evidence, that the defendants were a co-partnership under the firm name of 'E. F. Knight, Lessee,' and that E. F. Knight was their agent merely in the manufacture of brick, but without

authority to accept drafts or to make any commercial paper, and that said Knight, as such agent, assumed the authority to accept the drafts sued on, without the knowledge or consent of said defendants Talcott, Walker and Page, or either of them, and that when the knowledge came to them of the fact that said Knight had accepted the drafts held by the plaintiff, said Talcott, Walker and Page respectively repudiated the same and refused to recognize the authority of said Knight to accept said drafts, then the jury should find for said last named defendants."

The respect in which appellant contends the error exists is this: If there was a partnership between the defendants, and one of the partners authorized the acceptances, all the partners would be bound. As a matter of fact, Bowen, one of the partners, drew the drafts himself and procured their acceptance by Knight. Hence, Knight was clearly authorized to accept by one of the partners, and the act of acceptance was as binding on all the partners as if Bowen had himself accepted, "as he might fairly be argued to have done by the mere fact of drawing, and as he certainly did by directing the acceptances."

There are, in our opinion, two objections to this position: First—The evidence does not tend to show that Bowen, in his capacity as partner, authorized the acceptances, or, in that capacity, directed that they be made. Bowen was treasurer of the "Redfield, Bowen and Walworth Co." He understood the defendants to be indebted to that company. He, assuming that Knight, as agent, was authorized to make acceptances, binding on the defendants, drew the drafts, endorsed the words "accepted payable at ——" and presented them to Knight for his signature, and having obtained it, negotiated and traded them to the appellant. In all this, he was acting as treasurer and agent of the "Redfield, Bowen and Walworth Co." and collecting a debt due it from the defendants. He did not give or attempt to give authority to Knight to make the acceptances, for he assumed that

Knight already had such authority. He did not himself, in this transaction, act or pretend to act for the defendants, but for the "Redfield, Bowen and Walworth Co." And there is no evidence tending to prove any other state of facts.

Second—The drafts were drawn on the 20th day of December, 1875, and the 15th day of January, 1876, respectively. On the 8th of November, 1875, there was a resolution agreed to by the defendants, whereby Bowen was authorized to take charge of the property and accounts of the defendants then held by Knight, as lessee, for the purpose of winding up the business of the defendants as associate lessees, etc.

As to Knight, this took the business out of his hands and placed it in those of Bowen. It was a revocation of his agency. And, if there was a partnership between the defendants, it was a dissolution of that partnership, and Bowen's powers, thenceforth, were precisely those of a partner after dissolution, upon whom, by the mutual agreement of the partners, was the burden of closing up the unfinished business.

Kent, in his Commentaries, vol. 3 (8th ed.) 58 * 53, says: " If a partnership be formed for a single purpose or transaction, it ceases as soon as the business is completed, and nothing can be more natural and reasonable than the rule of the civil law, that the partnership in any business should cease when there was an end put to the business itself." See also Parsons on Partnership (1st ed.), 385.

The partnership claimed here was to last for one year, but there is nothing in the character of a contract for partnership, any more than in any other contract, to prevent the parties thereto subsequently modifying it and terminating it at an earlier period. They might, by mutual consent, terminate it when they pleased. Collyer on Partnership, (4th Am. Ed.) p. 108, § 119; 3 Kent's Com. (8th ed.) 108.

By this resolution, in the language of the civil law, as quoted by Kent *supra,* " there was an end put to the busi-

ness." Knight was superseded, and Bowen was not to prosecute or carry on the business, but to " wind. it up," or, in other words, close it up. His functions related exclusively to past transactions.

It is true, that after dissolution, a " kind of community of interest, of power and of liability," as between the original partners, continues,—Parsons on Partnership, (1st ed.) 380,—but this is only for the purpose of closing or " winding up " the affairs of the partnership. In the absence of stipulation to the contrary, in case of dissolution, every partner is left in possession of " the full power to pay and collect debts due to the partnership; to apply the partnership funds and effects to the discharge of their own debts; to adjust and settle the unliquidated debts of the partnership; to receive any property belonging to the partnership; and to make due acquittances, discharges, receipts and acknowledgments of their acts in the premises." Story on Partnership, § 328; Collyer on Partnership, (4th Am. Ed.) § 546. See also *Heartt* v. *Walsh*, 75 Ill. 200 ; *Gordon* v. *Freeman*, 11 id. 14; *Major* v. *Hawkes*, 12 id. 298; *Granger* v. *McGilvra*, 24 id. 152.

The dissolution does not revoke the authority to arrange, liquidate, settle and pay debts already created, but it operates as a revocation of all authority for making new contracts; and, since the giving of a promissory note, or the acceptance of a bill of exchange- or draft, is the making of a new contract, although it may be for a prior debt, a partner, after dissolution, can not thus bind the firm. Collyer on Partnership, (4th Am. Ed.) § 541; 3 Kent's Com. (8th ed.) 70; *Hamilton* v. *Seaman*, 1 Ind. (Carter's) 185; *Palmer* v. *Dodge*, 4 Ohio St. 21; *Wilson* v. *Forden*, 20 id. 89; *Haddock* v. *Crocheron*, 32 Texas, 276; *Curry* v. *White*, 51 Cal. 530; *Brown* v. *Broach*, 52 Miss. 536 ; *Smith* v. *Sheldon*, 35 Mich. 42; *B. K. of S. C.* v. *Humphreys*, 1 McCord, 389; Daniel on Negotiable Instruments, vol. 1, p. 280, § 373; *Perrin* v. *Keene*, 19 Me. 355; *National Bank* v. *Norton*, 1 Hill, 572.

The authority which the resolution gives to Bowen, "to wind up the business," it is plain, is not in excess of the power he possessed as partner, after dissolution, as shown, *supra.* That was precisely what each partner might do without any contract; but, by contract, they might agree that a designated one—Bowen here, should alone do it—or, in other words, that Bowen should, and the others should not, exercise the powers possessed by each as partners, in regard to settling up the partnership business.

If Bowen, of himself, could not have made the acceptances on the 20th of December, 1875, and January 15, 1876, respectively, because of the previous dissolution of the partnership, of course he could not do so by acting through Knight. Under the evidence before the jury, we do not think the instruction could have prejudiced appellant.

Appellant also contends that the third instruction given by the circuit court at the instance of the appellees is erroneous. It is in these words :

" The jury are instructed, even if they find from the evidence that the defendants were co-partners, under the name and style of 'E. F. Knight, Lessee,' and that E. F. Knight was their agent merely to transact business in the manufacture of brick, and not one of the partners, but that no direct or specific authority was given him to make or accept commercial paper, then the jury should find for the defendants ; unless they further find, from the evidence, that said Talcott, Walker and Page, or one of them individually, ratified the making of the paper sued upon in this suit."

The objection urged is, " if, in the instance of the acceptances sued on, one of the partners caused the same to be accepted by ' E. F. Knight, Lessee,' whether by Knight or a clerk, or some one not in the employ of the partnership, but the partner intending the name so appended to be an accept-

ance, then acceptances so made would be binding, and the ratification by the other partners unnecessary."

The objection to this is, as in the case of the last preceding instruction, there is no evidence tending to sustain it. There was no evidence tending to show that any one, in his capacity of partner, caused the acceptances to be made, and it clearly appears that at the date of the acceptances no one, as partner, had authority to make them, because the partnership claimed had been previously dissolved.

It is also contended by appellant that the fourth instruction given by the circuit court, at the instance of the appellees, is erroneous. It is this:

" The jury are instructed that if they believe from the evidence that said defendants were co-partners as alleged in the declaration, and that said co-partnership was dissolved on the eighth day of November, 1875, by mutual consent of the defendants, and that one of said defendants, F. A. Bowen, was appointed by the others to close up the business, and that E. F. Knight's connection therewith thereupon ceased, and that afterwards said Knight, on the 20th day of December, 1875, and the 15th day of January, 1876, respectively, accepted the drafts in question without any authority or ratification from said Talcott, Walker and Page, or either of them, then the jury should find for the defendants Talcott, Walker and Page, unless the jury should further find that said defendants Talcott, Walker and Page, had held themselves out to said plaintiff as such partners, and that said Knight had authority to accept drafts for them, and that said plaintiff was ignorant of said dissolution."

Appellant's position on this point is: " If there is a partnership, the members of which are known to a party who discounts the partnership paper after a dissolution of which he is ignorant, the paper is binding on all of the partners, irrespective of the question whether some of them held

themselves out as partners or not." But the evidence here fails to show that the members of the partnership were known to appellant previous to the dissolution on the 8th of November, 1875. It shows that "these drafts in question were given to the 'Redfield, Bowen & Walworth Co.,' either directly for goods supplied or labor performed, or in the renewal of drafts given for that purpose." Concede that they were given as renewals of prior notes and drafts, the only evidence we have been able to find that appellant had information, at any time, of who composed "E. F. Knight, Lessee," is that of Bowen. He was asked this question: " I want to ask this question, whether you explained to Mr. Richardson," [the manager of appellant prior and down to January 10, 1876,] "who constituted E. F. Knight, Lessee, when you got this paper discounted by the Bank of Montreal?" There could be no misunderstanding of the time to which this question alluded. It was not when prior notes or drafts were discounted, but "when you got this paper"— *i. e.*, the paper here sued upon—"discounted." The answer was: "I think I did."

Questions and answers then proceeded as follows: "Q. Are you sure of it? A. I think I did. Q. Are you sure of it? A. I generally explained the character of the papers that I took to them. Q. Did you inform Mr. Richardson that Mr. Page, Mr. Talcott, and Mr. Walker and these other gentlemen formed the association expressed by ' E. F. Knight, Lessee?' A. I could not swear to that. Q. You may have, and you may have not? A. I could not swear to it, but I think I did, and I have no doubt of it. I think I did not explain to Mr. Munroe " [Richardson's successor] " that Page, Talcott and Walker and these other gentlemen formed this association, from the fact that he" [Munroe] "was guided by the advice of Mr. Richardson and the officers of the bank in regard to the company's paper. Q. Is it not a fact that the Bank of Montreal or its officers did not know, and asserted that they did not know, until a late

period, of this association that you speak of? A. I don't know. Mr. Richardson knew of it. Q. Mr. Richardson knew of it? A. Yes, sir; and that was explained at the time. Q. Did you show him the articles of the association? A. I think not. I don't think I showed him any documents, as he was not in the habit of doubting my word at any time."

It is impossible to say this shows that appellant knew, prior to the 8th of November, 1875, what persons constituted "E. F. Knight, Lessee." The evidence of notice is, at best, very unsatisfactory. The witness seems to speak more from inference or argument than from any recollection. He "will not swear," but he "believes—has no doubt," etc. This is not satisfactory evidence. But, apart from this, the only time mentioned in either question or answer,—and hence the only time it can be presumed the witness talked about,—was that at which these drafts were discounted.

It is said the books of "E. F. Knight, Lessee," afford evidence that appellant had this knowledge. We do not so understand them. They show transactions with the Redfield, Bowen & Walworth Co., discounting of drafts, etc., but they do not show that appellant knew who constituted "E. F. Knight, Lessee," nor does it appear that those books were, prior to November 8, 1875, submitted to the inspection of appellant's officers so that they should thereby be charged with knowing all that they disclosed.

The name in which these drafts were accepted not disclosing that the defendants were in anywise connected with the acceptance, the mere fact that a prior note or draft, accepted or indorsed in the same name, was discounted by appellant, has, of itself alone, no tendency to prove that appellant was informed of the names of the defendants as those who constituted the acceptor. Appellant may have taken the papers on the assumed liability of E. F. Knight, alone, or of him and that of the "Redfield, Bowen & Walworth Co."

Since, by the resolution of the 8th of November, 1875, we hold that any partnership that may have previously existed between the defendants, was dissolved, it follows that nothing that was done or said by Bowen, at the time the drafts were discounted, could bind the other defendants.

There being no evidence tending to prove the state of facts relied upon by the plaintiff as requiring the qualification contended for to the principle announced in the instruction, appellant was not prejudiced by not having that qualification stated. Here, as in reference to the other instructions which we have discussed, there was no necessity to state principles of law having no basis in the evidence upon which to rest. As the facts were, the instruction could not mislead.

Appellant also objects that the circuit court erred in refusing to give his instructions, numbered 3, 5 and 6, as asked.

Ruling, as we do, that the resolution of the 8th of November, 1875, was a dissolution of any prior existing partnership between the defendants, these instructions were each properly refused, upon the ground that in each it is assumed that the acceptances might have been made after, as well as before that date, by Knight, or by one of the defendants, so as to bind all of the defendants; and neither of them is properly limited in respect of such dissolution.

Although, on appeal from the Appellate Court, we are not authorized to go into questions of fact to ascertain where the preponderance is, it is, nevertheless, essential that we examine the evidence so far as to determine whether its tendency is such as to present a fair question of fact for the consideration of the jury, to which mooted points of law, embodied in or omitted from instructions, are applicable.

We see no legal ground upon which the judgment below should be disturbed. It will, therefore, be affirmed.

*Judgment affirmed.*