# Bone Gap Banking Company, Assignee, Appellee, v. George W. Porter et al. H. J. Strawn, Appellant.

1. BILLS AND NOTES, § 462*—*when instruction in action by holder on accommodation note is erroneous as assuming facts.* Where an action was brought upon an accommodation note given to a copartnership bank and by its cashier indorsed in blank but not negotiated, and which had been turned over, after the bank had ceased to do business, by a majority of said bank's stockholders and directors to an agent for collection, who delivered same to the plaintiff bank as collateral to a loan made by some of said stockholders and directors, and pleas putting in issue the consideration, assignment and delivery of said note were filed, *held* that an instruction given on behalf of the plaintiff to the effect that the fact that said note was indorsed by one agent of the payee bank and "afterwards delivered by another agent of the bank would not make void such delivery; but such a delivery would be legal," was erroneous, because delivery of the note was a disputed and litigated question in the case, and it was erroneous to assume that said agent for collection was an agent for the purpose of delivery of the note, and to instruct that such delivery would be legal.

2. BILLS AND NOTES, § 462*—*when instruction in action by holder on accommodation note is erroneous as assuming facts.* Where an action was brought upon an accommodation note given to a copartnership bank and by its cashier indorsed in blank but not negotiated, and which had been turned over, after the bank had ceased to do business, by a majority of said bank's stockholders and directors to an agent for collection, who delivered same to the plaintiff bank as collateral to a loan made by some of said stockholders and directors, and pleas were filed putting in issue the consideration, assignment and delivery of such note, *held* that an instruction to the effect that if the jury believed from the evidence that said note was indorsed in blank by the payee, "then the title to said note passed to the plaintiff by the delivery of the note without further indorsement," was erroneous for the reason that said instruction assumed the title to the note passed to the plaintiff by delivery without reference to who delivered it or by whose authority it was delivered.

3. BILLS AND NOTES, § 462*—*when instruction directing a verdict for plaintiff is erroneous.* Where an action was brought upon an accommodation note given to a copartnership bank and by its cashier indorsed in blank but not negotiated, and which

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

had been turned over, after the bank had ceased to do business, by a majority of said bank's stockholders and directors to an agent for collection, who delivered same to the plaintiff bank as collateral to a loan made by some of said stockholders and directors, and pleas were filed putting in issue the consideration, assignment and delivery of such note, *held* that an instruction directing a verdict for the plaintiff unless the makers of said note should prove by a preponderance of the evidence that it was given without consideration was erroneous.

4. INSTRUCTIONS, § 126*—*when should not be given.* An instruction which is abstract in form though correct in its proposition of law should not be given where its tendency would be to mislead the jury.

5. BANKS AND BANKING, § 42*—*what are powers of directors after bank ceases to do business.* When a bank ceases to do a banking business, its directors are not authorized to transact a banking business or to borrow money and issue notes securing same for such bank, or to involve the credit of the other stockholders.

6. BILLS AND NOTES, § 461*—*when refusal to direct verdict for defendant is not erroneous.* Where an action was brought upon an accommodation note given to a copartnership bank and by its cashier indorsed in blank but not negotiated, and which had been turned over, after the bank had ceased to do business, by a majority of its stockholders and directors to an agent for collection, who delivered same to the plaintiff bank as collateral to a loan made by some of said stockholders and directors, and pleas were filed putting in issue the consideration, assignment and delivery of such note, *held* that a peremptory instruction for the defendants should have been given but for the fact there was some evidence in the record tending to show a ratification by the makers of said note of its purported delivery to the plaintiff and of the plaintiff's right to enforce its collection, and hence a refusal of such instruction was not erroneous.

7. BANKS AND BANKING, § 42*—*when agent for collection of bank's assets has no power to pledge assets as collateral security.* An agent for collection of a bank's assets after it has ceased to do business has no authority to pledge such assets as collateral security to a loan made by third persons, even though they were stockholders of the bank.

8. BILLS AND NOTES—*when bank holding note as collateral security is not holder in due course for value.* A note payable to order is negotiable only by the indorsement of the holder completed by delivery, and where such a note so indorsed, given as accommoda-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

tion paper, was held by the payee bank and turned over as part of its assets after it had ceased to do business to an agent for collection, who delivered same as collateral security for a loan to third persons by another bank having full knowledge of all the facts, *held* that such holder was not a holder in due course for value and could only recover on such note by showing that the makers thereof ratified the placing of the same as such collateral security, and had full knowledge of all the facts in connection therewith at the time said ratification took place.

Appeal from the Circuit Court of Edwards county; the Hon. JULIUS C. KERN, Judge, presiding. Heard in this court at the March term, 1916. Reversed and remanded. Opinion filed November 13, 1916.

JULIUS C. KERN, for appellant.

ALLEN E. WALKER, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

The Bone Gap Banking Company recovered a judgment in the Circuit Court of Edwards county, Illinois, against George W. Porter, Flossie A. Porter, C. A. McClure, W. A. Morgan and H. J. Strawn, in the sum of $1,000, from which judgment a joint and several appeal was prayed by said defendants, but which appeal was perfected by H. J. Strawn alone.

The declaration consists of the common counts and one special count. The special count charges that said above-named defendants executed and delivered to the Bone Gap Banking Company their promissory note in the sum of $1,000, dated March 3, 1911, due six months after date, which said note was alleged to have been assigned for value to appellee by said payee and that the same had not been paid. To said declaration a plea of the general issue and several special pleas were filed.

The first special plea is sworn to and puts in issue the assignment of the said note to appellee by said

Bone Gap Bank; the second alleges that said note was given without consideration and that it passed into the possession of appellee, if at all, long after maturity; the third alleges that said note was given without consideration and as accommodation paper only, and also alleges, in substance, that said note passed into the possession of appellee without consideration and not in the regular course of business. The fifth special plea alleges, in effect, that the note in question was held by the payee, the Bone Gap Bank, up to June 6, 1911, when it became insolvent; that at no time prior to its insolvency or since was said note negotiated by said Bone Gap Bank to appellee or to any one else. Replications were filed to said special pleas and issue joined, a trial was had resulting in a verdict and judgment in favor of appellee as above set forth.

The Bone Gap Bank, a copartnership composed of sixteen members, ceased doing business on June 6, 1911. It had been a financial failure and from time to time certain of its stockholders rendered it financial assistance by executing accommodation notes to be by it negotiated to raise funds to be used in its banking business. On the next day after the Bone Gap Bank ceased doing business, appellee, as the Bone Gap Banking Company, opened a bank in the same room and has since been operating a bank at said place.

On March 3, 1911, the note in question was executed by the above-named defendants and was delivered to E. A. Morgan, the then cashier of the Bone Gap Bank. Morgan, who was also a stockholder in said bank, resigned as its cashier on May 8, 1911, and one B. L. Mayne then became its cashier and so remained until it ceased doing business, on June 6, 1911. Mayne became the cashier of appellee bank when it opened on June 7, 1911.

About June 2, 1911, certain of the directors and stockholders of said Bone Gap Bank, nine in number, realizing its failing condition, entered into a contract

with one J. A. Turner for the closing up of said business. The substance of said contract is as follows:

"1st. That the said Bone Gap Bank shall turn over and deliver to said J. A. Turner all of its assets of every description, notes, bills and choses in action for the purpose of having the same collected and realized on as speedily as possible; that Turner was to have as compensation therefor, five per cent. of the amount collected or received by him.

"2nd. That as fast as said assets were collected the same should be used in paying the liabilities of said Bone Gap Bank.

"3rd. It was further provided that said business shall be closed up as speedily as practical and for said purpose of closing said business said Bone Gap Bank should retain its legal existence and when deemed expedient by Gould, Marriott and McClure, who were named as a committee for said purpose, the said Bone Gap Bank should institute suit for the collection of its notes, bills and claims. It was further provided that Turner might settle any of said notes, bills or claims by or without the consent of said committee."

This contract was signed by Gould, Harms, Drury, Porter, McClure, Marriott, Rude, Gould and Morgan.

The evidence further discloses that E. A. Morgan, while acting as cashier of said Bone Gap Bank, indorsed the note in question in blank but made no attempt to negotiate it either to appellee or to any one else, and that said note remained with said Bone Gap Bank until after it ceased to do business, and passed into the possession of said Turner. In May, 1912, Turner attempted to make a loan from appellee on behalf of said Bone Gap Bank, but appellee refused to make said loan. Thereafter during said month of May, 1912, Ansel Gould, Charles Marriott, Jacob Harms, J. T. Drury and H. E. Rude, certain of the directors and stockholders of the Bone Gap Bank, borrowed $2,000 of appellee. This loan was negotiated

by Turner for said parties, and in doing so Turner delivered to appellee, as collateral to said loan, the note in question. Thereafter, in December, 1912, these same parties borrowed of appellee $1,000, and the note in question was again delivered by Turner as collateral to said note. Appellee sought to collect the note in question from said defendants, and on their failure to pay the same this suit was instituted resulting in a judgment as above set forth.

The principal grounds relied on by appellant for a reversal of this case are that the court erred in refusing to peremptorily instruct the jury to find the issues for appellant and the other of the defendants sued; second, that the court erred in its rulings on the giving and refusing of instructions; third, that the verdict of the jury is against the manifest weight of the evidence. The judgment in this case will have to be reversed by reason of the erroneous rulings of the trial court in the giving and refusing of instructions.

The fourth instruction given on behalf of appellee is as follows:

"The court instructs the jury that as a matter of law that the fact that the note in question in this case was indorsed by the Bone Gap Bank by one of its agents, and afterwards delivered by another agent of the bank would not make void such delivery; but such a delivery would be legal."

This instruction is erroneous for the reason that it assumes that Turner, who was appointed by nine of the sixteen stockholders of the Bone Gap Bank after its dissolution to collect its assets, etc., was an agent of the bank for the delivery of said note. This was a disputed and litigated question in the case, and it was error for the court to assume Turner's agency for said purpose, and also to instruct the jury that the delivery of the note would be legal.

The fifth instruction is as follows:

"The jury are instructed that a note indorsed in

blank specifies no indorsee, and a note so indorsed may be negotiated by mere delivery from one person to another; and if you believe from the evidence in this case that the note in question was indorsed in blank by the payee, then the title to said note passed to the plaintiff by the delivery of the note without further indorsement.''

This instruction was erroneous for the reason that it assumes that the title to the note in question passed to appellee by delivery without reference to who delivered it or by what authority it was delivered.

The sixth instruction is as follows:

''The jury are instructed that the law implies that every promissory note that is made and delivered, was given for a good and valuable consideration; and in this case, the burden is upon the defendant to prove by a preponderance of the evidence that the note in question was given without consideration, and unless they have done this the jury should find for the plaintiff.''

This instruction is erroneous for the reason that it directs a verdict for appellee unless the makers of said note should prove by a preponderance of the evidence that the note was given without consideration, while the record in this case discloses that one of the material issues in the case was whether or not Turner, who was appointed by the nine stockholders to collect the assets of the bank, was authorized to deliver the note in question to appellee as collateral security for the notes given by Gould, Drury, Marriott, Harms and Rude, above mentioned.

The eighth instruction is abstract in form, and while it states a correct proposition of law it should not have been given in this case as its tendency would be to mislead the jury.  The other instructions given on behalf of appellee, we think, are without serious objection.

The second refused instruction offered by appellant and the other defendants in said cause in the trial court was to the effect that, when the Bone Gap Bank

ceased to do a banking business, the directors of said bank were not authorized to transact a banking business, or to borrow money and issue notes securing the same for said bank. This instruction we think states a correct principle of law and one applicable to the facts in this case and should have been given. *Bank of Montreal v. Page*, 98 Ill. 109. The court did not err in refusing the other of appellant's refused instructions.

It is strenuously insisted by appellant that the trial court should have given the peremptory instruction offered by the defendants in the trial court directing the jury to find the issues in favor of said defendants. This assignment of error raises the question as to whether or not there was any evidence in the record fairly tending to warrant a recovery in favor of appellee in this case. Were it not for the fact that there is some evidence in the record tending to show a ratification by appellant and the other of the makers of the note in question, of the purported delivery of said note to appellee, and of its right to enforce collection thereon, this instruction should have been given, but, in the state of the record, we are unable to see that the failure of the court to give said peremptory instruction is error. In our view of this case, when the Bone Gap Bank ceased doing business as a bank on the evening of June 6, 1911, the authority of the bank officials to borrow money and to involve the credit of the other stockholders in said bank ceased, and there is no evidence in this record even tending to show that appellant and the other of the makers of said note authorized Turner to borrow any money from appellee or any one else for said Bone Gap Bank. Without such authority he could not bind them. *Bank of Montreal v. Page, supra.*

The contract entered into with Turner, even if it had been signed by all of the stockholders of said Bone Gap

Bank, is not broad enough in its terms to authorize Turner to borrow money for said bank.

The evidence in the record is to the effect that when Turner attempted to borrow money of appellee for the Bone Gap Bank, appellee, through its officers, refused to make any loan whatever to said bank, but did make two different loans to Gould and the other four persons above named, and attempted to deliver to appellee the note sued on in this case as collateral security for said notes. We know of no rule of law giving Turner that authority. The loan was not made to the bank but to individuals. That being true, Turner certainly would not have authority to pledge the assets of the Bone Gap Bank as collateral for the note of third parties, even though they were stockholders of the bank. It will be further observed that under the evidence in this case appellee was not a holder of the note sued on in due course, as this note never was negotiated by the payee. While the evidence is to the effect that Morgan indorsed the name of the bank on said note as its cashier, he never delivered said note while he remained cashier, neither did Mayne, his successor, deliver the same during his term as cashier, which term lasted until the bank ceased doing business. Under the Negotiable Instrument Statute, a note payable to order is only negotiated by the indorsement of the holder completed by delivery. Section 48, ch. 98, Hurd's Revised Statutes (J. & A. ¶ 7669).

Turner, who next came into possession of the assets of the Bone Gap Bank, had no authority to complete its negotiation by delivering the same as collateral security for the note of the above-named stockholders. We recognize the rule of law that holds liable the makers of accommodation paper in the hands of a holder in due course for value, even though said note passed into the hands of such holder after maturity, and with notice to the holder that it was accommoda-

tion paper. *Diversy v. Loeb,* 22 Ill. 394; *Naef v. Potter,* 226 Ill. 628; *Peacock v. Phillips,* 247 Ill. 474.

We are of the opinion, however, that this rule of law does not apply in this case, as appellee is not a holder in due course for value in this case. Appellee had notice that the note in question was part of the assets of the Bone Gap Bank, or was held by said bank as accommodation paper at the time said note came into its possession through Turner. Appellee also had notice that said bank had ceased doing business as a bank at said time, for appellee's bank opened for business on the morning of June 7, 1911, in the same room occupied by the Bone Gap Bank when it ceased doing business on the evening of June 6, 1911, and Mayne, who was acting for the Bone Gap Bank as its cashier when it ceased doing business, became the cashier of appellee's bank when it opened for business on the next day.

We are therefore of the opinion that before appellee can show a right of recovery in this case, it must be able to show by the evidence that the makers of the note sued on ratified the placing of said note with appellee as collateral security for the note given by Anson Gould and the other four-named persons, having full knowledge of all the facts in connection therewith at the time said ratification took place.

For the errors referred to in this opinion the judgment of the trial court is reversed and the cause is remanded.

*Reversed and remanded.*