SINGLETON et al. v. MOORE.

(Circuit Court of Appeals, Second Circuit. December 1, 1919.)

No. 103.

1. PARTNERSHIP ☞280—EFFECT OF PROVISIONS FOR LIQUIDATION AT EXPIRA-TION OF CONTRACT PERIOD.

It is competent to provide in partnership articles that, when the term fixed for the duration of the partnership business has expired, the power of liquidating the partnership business shall vest in some specified one of the partners, and it thereupon becomes the duty of such partner, as liquidating agent, to collect the assets, adjust the debts, etc.

2. PARTNERSHIP ☞280—PARTNER DESIGNATED AS LIQUIDATING AGENT ON TERMINATION OF PARTNERSHIP HAS SOLE CONTROL.

Where partnership articles designated one partner as liquidating agent on termination of the partnership, the other partners have no power to act, but all power is conferred on the liquidating partner.

3. PARTNERSHIP ☞280—NONINTERFERENCE BY COURTS WITH PARTNER APPOINT-ED AS LIQUIDATING AGENT.

When partnership articles intrust the charge of the property and the winding up of the partnership affairs to one of the partners, the courts will not interfere with his proceedings, unless a palpable breach of the partnership articles is shown, or misconduct appears, which amounts to fraud and endangers the property.

4. PARTNERSHIP ☞282—LIQUIDATING PARTNER SHOULD SELL STOCK WHICH HAD ACQUIRED HIGH MARKET VALUE FROM COMPETITION BETWEEN FORMER PARTNERS.

Where, after expiration of a partnership by its terms, corporated stock pledged by the partnership greatly increased in value, because the liqui-

dating partner and the other partners were each seeking to obtain control of the corporation whose stock was pledged, *held*, that it was the duty of the liquidating partner to sell the stock at the period of high price, though such sale would be injurious to him as an individual; it being for the benefit of the firm.

5. PARTNERSHIP ☞282—LIQUIDATING PARTNER SHOULD SELL STOCK WHICH HAD ACQUIRED HIGH MARKET VALUE FROM COMPETITION BETWEEN FORMER PARTNERS.

Where partnership, which had disposed of textile products, expired, and the partner named as liquidating agent and the other group of partners each continued in the business, and desired to control a textile corporation, shares of which the firm had pledged as collateral to secure a debt, *held* that, where the annual meeting of the corporation was not far distant, and these after demand for stock would lessen, and price would fall, it was the duty of the liquidating partner to sell same, instead of dividing it between the partners; hence as, if such sale would work any inequality, it might be corrected on subsequent reference and accounting, the liquidating partner cannot complain of an order directing sale of such stock.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit by Louis F. Singleton and others against Edgar B. Moore. From an interlocutory order appointing a receiver, and directing the sale of corporate stock which had been pledged by a partnership that had expired according to the terms of the partnership agreement, defendant appeals. Affirmed.

This cause comes here upon an appeal from an interlocutory order entered on July 5, 1919, in the United States District Court for the Eastern District of New York. The order appealed from appointed a receiver of 435 shares of capital stock of the Camden Woolen Company, a corporation organized under the laws of the state of Maine. These shares of stock belonged to the firm of E. B. Moore & Co., which firm is in liquidation, and is composed of appellant and respondents, and the shares aforesaid are held by the Lincoln National Bank as collateral for a loan amounting to $32,657.57. E. B. Moore, the appellant, is the liquidator of the partnership by the terms of the articles of copartnership. The firm and liquidator are both solvent. No rights of creditors are involved.

The order appealed from directed the sale of this stock by the receiver at public auction, the repayment of the loan for which the stock is held as collateral, and that the balance be held subject to the further order of the court. The appellant obtained a supersedeas upon filing a bond for $20,000.

All of the firm capital of E. B. Moore & Co., or practically all of it, was contributed by appellant, who founded the firm prior to 1904. The partnership expired according to its terms on December 31, 1918. In the year 1917 the appellant's share of the firm profits had been 55 per cent.; the respondents each receiving 15 per cent. In the year 1918, which was the last year of the partnership, his share was 40 per cent., while each of the respondents received 20 per cent.

The respondents were former employés of the firm, who became members of it in 1910. The appellant was always the financially responsible member of the partnership, and always financed it with his own personal credit and financial connections.

Fitzgerald, Stapelton & Mahon, of New York City (Luke D. Stapelton, of New York City, of counsel), for appellant.

Wood, Malloy & France, of New York City (Melville J. France and

Francis X. Mahon, both of New York City, on the brief), for appellees.

Before WARD, ROGERS, and MANTON, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The appellant contends that, as the partnership articles expressly provided that upon the expiration of the partnership he should have the right to liquidate the partnership affairs, the court below acted without authority in taking matters out of his hands by appointing a receiver and directing him to obtain possession of and sell the stock, an asset of the partnership, in the event that he, the liquidating partner, continued to refuse to offer it for sale.

[1-3] It is elementary that it is competent to provide in the partnership articles that, when the term fixed for the duration of the partnership business has expired, the power of liquidating the partnership business shall vest in some specified one of the partners. It then becomes the duty of the liquidating partner to collect the assets and adjust debts due to the firm. It is also his duty to turn the assets into money and then to pay and discharge the outstanding liabilities. After these duties have been performed he is to pay over to the other partners their proper share in the remaining surplus. 22 Am. & Eng. Encyc. of Law, 218. And the designation of a liquidating partner takes away from the other partners authority to act and confers it exclusively upon the liquidating partner. Hayes v. Heyer, 4 Sandf. Ch. (N. Y.) 485; Montreal Bank v. Page, 98 Ill. 109. He is the sole agent of the partnership for the purpose of winding up its affairs. And when the partnership articles intrust the charge of the property and the winding up of the partnership to one of the partners, the court will not interfere with his proceedings unless a palpable breach of the partnership articles is shown, or misconduct appears which amounts to fraud or which endangers the property. Walker v. Trott, 4 Edw. Ch. (N. Y.) 38.

The court below admitted, as indeed it would be expected to do, that there is no question that under the partnership agreement, the appellant as the liquidating partner has the legal right to dispose of the stock in his own way, at his own time, and in his own discretion, unless in doing so he thereby would work a fraud upon his former partners.

[4] This being the law, we shall state more in detail the facts which led the court below to take the action complained of on this appeal, and shall then inquire whether the facts justify the order which is here under review.

Prior to the dissolution of the partnership of E. B. Moore & Co., which had been engaged as distributors of textiles, E. B. Moore had informed his copartners that he intended to continue his business after the dissolution under the name of E. B. Moore & Co., as the agreement provided that he might do. In the meanwhile the plaintiffs, who had formed a new firm under the name of Frankenberg, Morgan & Singleton, with offices in the same building in which E. B. Moore & Co. had been established, it is claimed were maneuvering to be in a

position to take over and control the profitable part of the business of the partnership upon its termination. Both the plaintiffs and the defendant were anxious to gain control of the Camden Woolen Company, which operated a woolen mill at Camden, Me. The firm of E. B. Moore & Co. handled the product of this mill, and each side desired' control of this Camden Company so as to handle the output of the mill to the exclusion of the other at the termination of the partnership. Affairs had been so managed that, when the new firm of Frankenberg, Morgan & Singleton began business, it became the exclusive selling agents of the Camden Woolen Company. Then began a contest to obtain enough of the stock of the Camden Company to control the affairs of that company. The plaintiffs began to purchase in the open market all of the shares they were able to buy, and had control of 214 shares, and defendant controlled 369 shares out of a total of 1,130 shares. The annual meeting of the Camden Company was to be held on July 16, 1919.

The activities of these parties in canvassing the shareholders to buy their stock created a market value for the stock which it had never had before, and which it is said it will not have again after the annual meeting is held. The 433 shares of Camden stock were carried on the books of E. B. Moore & Co. at about $20,000, or about $46 per share. The last previous sale in 1917 brought $55 per share, and the ordinary selling price was about $60 per share. Because of the active competition for purchase of the stock in order to control the annual meeting, the stock, if sold prior to the meeting, will bring $90 per share, and possibly $160 a share. After the annual meeting has been held, the evidence is that the stock will drop back to $60 per share. In other words, it appears that, if the 433 shares which belong to the partnership are sold at public auction prior to the annual meeting at even $90 per share, they will bring $38,970, and discharge the firm's "outstanding liability" of $32,657.57, and leave remaining a surplus of $6,312.43; whereas, a sale after the annual meeting will, as defendant admits, bring the normal price of $60 a share, or a total of $25,980. This not only would fail to discharge "the outstanding liability" above referred to, but it would leave a deficit of $6,677.57, instead of a surplus of $6,312.43. There is, moreover, a possibility, as the evidence discloses, that the stock may bring as much as $43,300 in excess of its normal value. If this block of 433 shares is not sold, the liquidating partner can control the annual meeting, and for this reason he is opposed to a sale, and asks that the court's order be reversed. The course he proposes is in his interest as an individual. It is not in the interest of the members of the firm.

On this state of facts the court below entered the order appointing the receiver and directing the sale—to be made on 10 days' notice at public auction. That order proceeds upon the theory that to withhold the stock from sale under the circumstances disclosed would operate as a fraud upon the rights of the other members of the firm in liquidation. It would be to prefer the personal interest of the liquidating partner to the interest of the firm as a whole. This it seems to us he has no right to do, and that he cannot do it without defrauding those

whose interests are intrusted to his keeping. His plain duty undoubtedly it was to sell the stock at the high price obtainable under the peculiar conditions which existed, and his failure to perform that duty justified the order which the court entered.

[5] The defendant, objecting, however, to the order of sale, has suggested that the stock should be divided and distributed in specie among the several members of the firm, instead of being sold. His claim is that if a sale takes place, and he and the plaintiffs bid at the sale, they will not go in on a fair and equal footing. He argues that the plaintiffs can afford to outbid him at the sale, as under the partnership agreement they will be entitled to receive back as profits 60 per cent. of whatever the stock brings over $50 a share, while defendant is to receive only 40 per cent. of the profits. It is therefore a more just and equitable method, he insists, to distribute the stock in specie.

It would seem to be a sufficient answer that the partnership articles specifically provide that the firm stocks shall be sold at the termination of the partnership. These articles read that—

"All the stocks, merchandise, indebtedness owing to the firm, and other assets of the said business shall be converted into cash, and there shall be repaid to each of the partners the amounts of their capital standing to their respective credit on the books of the partnership, and, after payment of the same, the remaining assets of the firm shall be divided among them as follows."

The partners made their own contract, and no court has any authority to change it into something different. Courts do not make contracts.

The defendant relies on Kelley v. Shay, 206 Pa. 209, 55 Atl. 925. In that case the court admitted that the general rule was that upon the dissolution of a partnership it is the right of each partner to have the partnership property converted into money by a sale, but said that the rule did not apply where the circumstances of the parties would give to one an advantage in the bidding; and the court held that in such a case, if all the debts were paid, the court might divide the property in specie. It is evident that that case differs from the instant case, in that in this case the debts are not paid, and in the former case it does not appear that the articles of partnership expressly declared that the firm's stock should be sold.

In Dickinson v. Dickinson, 29 Conn. 600, the bill asked for the division of the property of the firm. The court declared:

"We had supposed this object could only be effected by a sale of the property, and a conversion of it into cash, and then dividing the cash, because as between partners there is no other mode, where they do not agree, of ascertaining the value of the partnership property, or of disposing of it."

And in Sigourney v. Munn, 7 Conn. 11, the court declared that—

"In every case in which a court of equity interferes to wind up the concerns of a partnership, it directs the value of the stock to be ascertained in the way in which it best can be done; i. e., by a conversion of it into money. Each party may insist that the joint stock shall be sold."

The rule is correctly stated in 30 Cyc. 744, where it is laid down as follows:

"In an action for partnership dissolution and accounting, the entire property of the firm is to be converted into cash, unless all the partners, by an honest and lawful agreement, assent to a distribution of the assets in specie."

The order appointing the receiver and directing the sale of the stock provides that any party to the action may purchase the stock, and that any bid may be rejected by the receiver or disapproved by the court, if inadequate, and the court in its opinion stated that, if subsequent proceedings showed that defendant had been inequitably caused to create a fund, of which the plaintiffs received 60 per cent. to defendant's 40, the equities might be adjusted in the subsequent accounting during the litigation, and the order so provides.

We fail to discover error in the order as entered, and it is affirmed.